STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1092

MARY J. KINKLE

VERSUS

R.D.C., L.L.C.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 76,156 - DIV. B
HONORABLE FRED C. SEXTON, JR., DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

GLENN B. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART; AND REMANDED.

R. Lewis McHenry
R. Patrick Vance
Virginia M. Gundlach
Jones, Walker, Waechter, Poitevent, Carrére & Denégre, L.L.P.
201 St. Charles Ave. - 49th Floor
New Orleans, LA 70170
(504) 582-8000
Counsel for Plaintiff/Appellant
      Mary J. Kinkle

**Joseph J. Bailey**
**Ricky L. Sooter**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Defendant/Appellee**
      **R.D.C., L.L.C.**

GREMILLION, Judge.

The plaintiff, Mary J. Kinkle, in her capacity as Personal Representative of the Estate of Richard F. Kinkle, appeals the trial court's grant of summary judgment in favor of the defendant, R.D.C., L.L.C. For the following reasons, we affirm in part, reverse in part, render in part, and remand the matter to the trial court for further proceedings.

**FACTS**

Richard F. Kinkle died testate on January 29, 2003, in Charlevoix County, Michigan. Prior to his death, he was a member of a limited liability company, R.D.C., which was organized in June 1996, in Richland Parish, and doing business in Natchitoches Parish. The original members of R.D.C., Lanier Machen, William E. Stansbury, Steve D. Stroud, and Jerry L. Fletcher, organized it for the purpose of constructing a prison in Richland Parish, Louisiana, which they then leased to the State of Louisiana. Richard became a member of R.D.C. in June 1998, after which he loaned it $496,767.81 for construction costs and assisted it in obtaining a loan of $2,170,000 from Sterns Bank of St. Cloud, Minnesota.

In September 2000, Richard purchased Machen's 15% ownership interest in R.D.C. Subsequently, he executed a continuing guarantee in favor of Stearns Bank with regard to R.D.C.'s loan of $2,170,000. The guarantee amounted to $1,165,000. As a member, Richard received monthly distributions from R.D.C. out of the company's surplus income; however, following his death on January 29, 2003, R.D.C. ceased the payment of any monies to his estate.

2

On March 6, 2003, Mary was appointed Personal Representative of Richard's estate (Estate). On May 22, 2003, Stearns Bank made a claim against Richard's continuing guarantee, which was partially disallowed by the Genesee County Probate Court, Michigan, since the loan was not in default. On September 15, 2003, Mary filed a Petition for Declaratory Judgment and For Accounting against R.D.C. seeking a judgment declaring that the Estate was entitled to its proportionate share of distributions of R.D.C.'s surplus income and to an accounting of all of R.D.C.'s activities since January 29, 2003. She further sought a judgment of 55% of all surplus income distributions made to any member since Richard's death.

In response, R.D.C. filed an exception of no right of action and answered the petition raising the affirmative defense that Mary was not entitled to the requested relief since she had not been accepted as a member of the limited liability company (LLC). In reconvention, R.D.C. sought a declaratory judgment that it was not required to admit Mary or the Estate as a member, as the Estate was only an assignee of Richard's interest. It further sought judgment that the Estate could only receive the value of Richard's ownership interest as of the date of his death, which value it requested the trial court to determine.

Thereafter, Mary filed a motion for summary judgment arguing that she, as the Personal Representative of the Estate, was entitled to a proportionate share of all interim cash distributions made by R.D.C. from the time of Richard's death, as well as an accounting of all distributions made to the members of the LLC from that point on. During the hearing on the motion, R.D.C. made an oral motion for summary judgment arguing that the members, in drafting the Operating Agreement, intended

3

to allow for the reconstitution of the LLC after the death of a member and then to pay the estate of the decedent a proportionate value of the LLC at the time of his death. Counsel for Mary waived the ten day service provision. Following argument on these motions, the trial court denied Mary's motion, but granted summary judgment in favor of R.D.C. finding that it was reconstituted after Richard's death by a unanimous vote of the remaining members in accordance with the Operating Agreement. It further held that the remaining members were required to liquidate Richard's share of R.D.C., at a value to be determined as of the date of his death. Finally, it held that Mary was not entitled to participate in any distributions made after Richard's death nor was she entitled to an accounting as to distributions made therefrom. A partial final judgment was rendered on April 22, 2004. This appeal by Mary followed.

### ISSUES

On appeal, Mary raises four assignments of error. She first argues that the trial court erred in considering R.D.C.'s instanter motion for summary judgment, in violation of the ten day service provision. Next, she argues that the trial court erred in finding that R.D.C. was entitled to liquidate Richard's ownership interest and in failing to find that she, as an assignee, was entitled to receive a proportionate share of R.D.C.'s distributions from the date of his death, as well as an accounting as to any made.

### INSTANTER MOTION

In her first assignment of error, Mary argues that the trial court erred in considering R.D.C.'s instanter motion for summary judgment, in violation of the ten day service provision. However, we find no error in the trial court's ruling.

4

Article 962 of the Louisiana Code of Civil Procedure provides, "An application to the court for an order, if not presented in some other pleading, shall be by motion which, unless made during trial or hearing or in open court, shall be in writing." In *Clark v. Favalora*, 98-1802, pp. 6-7 (La.App. 1 Cir. 9/24/99), 745 So.2d 666, 671, the court stated:

> LSA-C.C.P. art. 966B requires service of a motion for summary judgment at least ten days before the time specified for the hearing. While service can sometimes be perfected by mail, pleadings that require an answer or appearance cannot be served by mail. *See* LSA-C.C.P. art. 1313. A motion for summary judgment is a pleading that requires some form of response, answer or appearance and therefore, service cannot be perfected by mail. *Norwood v. Winn Dixie*, 95-2123, p. 2 n. 1 (La.App. 1st Cir.5/10/96); 673 So.2d 360, 361 n. 1. If a pleading cannot be served by mail, it must be served by the sheriff. LSA-C.C.P. art. 1314.

> The requirement of LSA-C.C.P. art. 966 B that the motion for summary judgment be served at least ten days before the time specified for the hearing is designed to give fair notice of the evidentiary and legal bases for the motion. The adverse party then has time to respond with evidentiary documentation of its own, either in the form of affidavits or discovery devices, and to be prepared to meet the legal argument of the moving party. *Vardaman v. Baker Center, Inc.*, 96-2611, p. 5 (La.App. 1st Cir.3/13/98); 711 So.2d 727, 730.

In 2003, La.Code Civ.P. art. 966(B) was amended to provide for service of the motion at least fifteen days prior to the hearing on the motion, rather than the ten day period alluded to in *Clark*. However, whatever the service period, we find that an exception of insufficiency of proper service may be waived by the opposing party. A party making a general appearance at the hearing on the motion, waives any defects pertaining to the service of the motion for summary judgment. La.Code Civ.P. art. 925; *Richardson ex rel. Brown v. Lagniappe Hosp. Corp.*, 33,378 (La.App. 2 Cir. 6/21/00), 801 So.2d 386; *LeBlanc v. Landry*, 371 So.2d 1276 (La.App. 3 Cir. 1979).

5

In this instance, R.D.C. orally moved for summary judgment during the hearing on Mary's motion. After the trial court denied her motion, R.D.C. asked her counsel if he would waive the ten day service requirement on its motion for summary judgment. Counsel for R.D.C. specifically asked:

> [Counsel for R.D.C.]: Would you agree to a judgment, or do you want to come back?
>
> [Counsel for Mary]: Do I want to what?
>
> [Counsel for R.D.C.]: I have to serve you 10 days before. Do you want to agree to this?
>
> [Counsel for Mary]: Yeah, well if, that's fine.
>
> [Counsel for R.D.C.]: Judge I think we'll agree that you're ruling in our favor and I, well he's gonna waive service on the 10 days for the Motion and we'll just go ahead and move for Summary Judgment on our behalf with the same exhibits.

Since Mary's counsel agreed to waive service on the instanter motion for summary judgment, we find that she waived her right to except to the insufficiency of service of process. Accordingly, we find no merit in this assignment of error.

## SUMMARY JUDGMENT

The law pertaining to summary judgment is well settled. Summary judgments are reviewed de novo. *Magnon v. Collins*, 98-2822 (La.7/7/99), 739 So.2d 191. Thus, an appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B), (C).

In her next three assignments of error, Mary argues that the trial court erred in finding that R.D.C. was entitled to liquidate Richard's ownership interest

6

pursuant to its Operating Agreement. She further argues that the trial court erred in failing to find that the Estate, as an assignee, was entitled to a proportionate share of R.D.C.'s distributions from the date of his death, as well as an accounting of all distributions made since then.

The law pertaining to LLCs is found in La.R.S. 12:1301 et seq. An LLC is defined as "an entity that is an unincorporated association having two or more members that is organized and existing under this Chapter." La.R.S. 12:1301(A)(10). An operating agreement, whether written or oral, governs the operation of the LLC. La.R.S. 12:1330(A)(16). In the absence of such an agreement, the default provisions of the Louisiana LLC law govern. Susan Kalinka, *Limited Liability Companies and Partnerships*, 9 Louisiana Civil Law Treatise § 1.5, 16 (3d ed. 2001).

An operating agreement is contractual in nature; thus, it binds the members of the LLC as written and is interpreted pursuant to contract law. *Hebert v. Ins. Ctr., Inc.*, 97-298 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, *writ denied*, 98-0353 (La. 3/27/98), 716 So.2d 888; La.Civ.Code art. 1983. In *Henderson v. Sellers*, 01-529, pp. 4-5 (La.App. 3 Cir. 12/5/01), 815 So.2d 853, 856, we explained the law pertaining to contractual interpretation:

> The interpretive purpose is to determine the common intent of the parties. La.Civ.Code art.2045. In attempting to determine that common intent, we may not seek a different interpretation "when the words of a contract are clear and explicit and lead to no absurd consequences." La.Civ.Code art.2046. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ.Code art.2048. We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art.2053. Additionally, where the doubt created by a contract provision cannot be removed, we must interpret

7

that provision against the party who furnished it. La.Civ.Code art.2056. The determination of whether the words of a contract are clear and explicit or ambiguous is a question of law. Thus, an appellate court's determination on review is whether the trial court interpreted the contract correctly or incorrectly. *Hebert*, 706 So.2d 1007.

### *Liquidation of Membership Interest*

In her second assignment of error, Mary argues that the trial court erred in finding that R.D.C., pursuant to its Operating Agreement, was entitled to liquidate Richard's ownership interest subsequent to his death.

The provisions of the Operating Agreement pertaining to the death of a member and dissolution of the LLC provide:

16. **Death of Members**. The death or retirement of any member *shall not dissolve* the Company as to the other members, all in accordance with Section 17.

17. **Dissolution**. (a) The Company shall be dissolved upon the occurrence of any of the events:

(i) when the period fixed for the duration of the Company shall expire;

(ii) by the unanimous written agreement of all of the members;

(iii) *upon the death, retirement, resignation, expulsion, bankruptcy or dissolution of a member or occurrence of any other event which terminates the continued membership of a member in the Company; provided, however, that the Company shall be reconstituted and its business continued upon the approval of two-thirds of the members voting in interest*;

(iv) the occurrence of any event which would make unlawful the continuing existence of the Company; or

8

> (v) any other event causing the dissolution of the Company pursuant to law.
>
> As soon as possible following the occurrence of any of the events as provided in subparagraphs (i), (ii), (iii), (iv), and (v) hereinabove, pursuant to which the Company will not be continued, the Company shall execute duplicate originals of a statement of intent to dissolve, in such form as shall be prescribed by the Secretary of State of the State of Louisiana, and the same shall be delivered to that office.
>
> (b) Upon the dissolution or termination of the Company as aforesaid, a financial statement shall be prepared by the Company, which statement shall set forth the Company's assets and liabilities, and a copy of such statement shall be furnished to each of the members within a reasonable time thereafter. Assets shall be liquidated by the members acting as liquidating trustee(s) as necessary to make payments to creditors; otherwise, distribution may be made to the members in cash or in kind at fair market values in satisfaction of the interests of such members. If a member has died or become bankrupt, the remaining members shall act as liquidating trustees, and if there is no remaining member, then the liquidating trustee shall be such person as the person then holding a majority in capital interest of the Company shall designate. The liquidating trustee shall apply all Company assets and proceeds therefrom in accordance with the provisions of the statutes of the State of Louisiana relating to limited liability companies.
>
> (c) The member or liquidating trustee shall have the power and authority to make, execute, acknowledge and file all documents required to effectuate the dissolution and termination of the Company, and each of the members hereby irrevocable (sic) constitutes and appoints the liquidating trustee as true and lawful attorney of the member in such respect.
>
> (d) When all debts, liabilities and obligations have been paid and discharged or adequate provision has been made therefor and all of the remaining property and assets have been distributed to the members, the articles of dissolution shall be executed in duplicate, verified by the person signing the statement and delivered to the Secretary of the State of the State of Louisiana, or as otherwise required by law.

(Emphasis added).

R.D.C. interprets these two provisions of the Operating Agreement to provide that the LLC dissolved upon Richard's death, but not as to the remaining

9

members.  Conversely, it argues that upon dissolution of the LLC, the remaining members can choose complete liquidation of the LLC or they can reconstitute and continue its business as before, as well as wind up the affairs of the dead member by liquidating his membership interest as though the LLC had been fully liquidated. This interpretation is inconsistent since it states first that R.D.C. did not dissolve upon Richard's death, but then finds that it did dissolve upon his death.  However, we find that under a plain reading of the Operating Agreement, R.D.C. never dissolved after Richard's death and that it does not provide a means for the remaining members to liquidate his ownership interest.

Section 16 provides that R.D.C. *will not* be dissolved upon the death of a member, in accordance with Section 17.  Subsection (a) of Section 17 provides that it *will be* dissolved upon the death of a member; "provided however, that the Company shall be *reconstituted* and its business continued upon the approval of two-thirds of the members voting in interest." (Emphasis added).  Thus, if the members choose to reconstitute, the LLC is not dissolved and its business is continued, as provided by Section 16.  Should the members choose not to reconstitute, then they must file a statement of their intent to dissolve with the Secretary of State.

Once the members decide to dissolve the LLC, the procedures provided in the remaining subsections of Section 17 come into play.  These subsections describe the actions to be taken by R.D.C. in order to wind up its affairs.  Subsection (b) requires the preparation of a financial statement, the liquidation of the LLC's assets, the payment of creditors, and the distribution of the remaining funds, in "cash or in kind at fair market values" to the members in "satisfaction of the interests of

10

such members." Subsection (b) further provides that if a member has died or become bankrupt, the remaining members shall act as the liquidating trustees of the LLC. If no members remain in the LLC, then a liquidating trustee shall be appointed by the person holding a majority interest in the LLC. Once the affairs of the LLC are wound up and any remaining property or assets distributed to the members, subsection (d) requires the liquidating trustee to execute and file the articles of dissolution with the Secretary of State, attesting that the aforestated procedures have been followed and the LLC is terminated.

Pursuant to this interpretation, we find that R.D.C. did not dissolve upon Richard's death, as evidenced by the resolution approving the continuation of its business, which was passed by the remaining members subsequent to his death. Further, R.D.C. did not file a statement of intent to dissolve with the Secretary of State, nor did it follow any of the procedures required by subsections (b) through (d) of Section 17. Section 17 requires that "[u]pon the dissolution or termination of the Company as aforesaid," a financial statement will be prepared and furnished to the members within a reasonable amount of time. It further provides that the LLC's assets shall be liquidated by the members acting as liquidating trustee(s) in order to pay its creditors, and once its debts are satisfied, then payment is made to the members in an amount corresponding to their interest in the LLC. There is no evidence in the record, that R.D.C. complied with its own Operating Agreement. Mary's petition alleges that its only action after Richard's death was the cessation of any payments to which he was entitled. R.D.C. has failed to introduce any evidence suggesting otherwise. Thus, we find that it did not dissolve upon Richard's death.

11

Pursuant to this determination, we find that the remaining members have no resort to the procedures provided in Subsection (b) as a means of liquidating Richard's ownership interest. After reading the Operating Agreement, we further find that it contains no provision or procedures for the liquidation of a member's interest in the event that one should die or become incapacitated. Although they easily could have provided for such an eventuality, the organizing members did not and, consequentially, they are bound by the terms of their Operating Agreement. Moreover, no such provision is provided in the default provisions of the LLC laws as they existed in 1996, when R.D.C. was organized. Thus, we find that the remaining members of R.D.C. are not entitled to liquidate Richard's ownership interest.

### *Distributions and Accounting*

In her third and fourth assignments of error, Mary argues that the trial court erred in finding that she was not entitled to receive a proportionate share of R.D.C.'s distributions from the date of his death, as well as an accounting of all distributions made subsequent to his death.

Louisiana Revised Statute 12:1333 provides in pertinent part with regard to the powers of the estate of a deceased member of an LLC: "If a member who is an individual dies . . . the member's membership ceases and the member's executor, administrator, guardian, conservator, or other legal representative *shall* be treated as an assignee of such member's interest in the limited liability company." (Emphasis added). Thus, pursuant to La.R.S. 12:1333, Richard's membership in R.D.C. ceased upon his death and Mary, his personal representative, became an assignee of his

membership interest in the LLC. The rights of an assignee in an LLC are provided

for in La.R.S. 12:1330(A):

> Unless otherwise provided in the articles of organization or an operating agreement, a membership interest shall be assignable in whole or in part. An assignment of a membership interest shall not entitle the assignee to become or to exercise any rights or powers of a member until such time as he is admitted in accordance with the provisions of this Chapter. *An assignment shall entitle the assignee only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.*

(Emphasis added). Accordingly, although she is not entitled to act as a member in the

LLC, Mary, as an assignee of Richard's interest, is entitled to receive that which he

was entitled to receive.

The Operating Agreement provides the allocations and distributions the

members are entitled to receive. Subsection 12 provides:

> The Company's profits, losses, and credits, and each item thereof, shall be allocated to the members in proportion to the balances in their respective capital accounts (before taking into account the amount to be allocated for the current period) at the end or each fiscal year. It is expressly provided herein the Company distributions may be made only if assets of the Company be in excess of all liabilities of the Company, the members in proportion to the balances in their respective capital accounts. Net cash of the Company shall be distributed annually or as approved by a majority of members voting in interest. "Net Cash" means gross receipts less expenses and reserves. All expenses of the Company incidental to the conduct of the Company business shall be paid from the Company's gross income or capital.

Thus, Mary is entitled to an allocation of Richard's share of the profits, losses, and

credits in proportion to the balance of his capital account at the end of each fiscal

year. She is further entitled to his proportionate share of R.D.C.'s net cash, which is

required to be distributed annually or as approved by the members. If it is determined

that the members voted to make such distributions monthly, rather than annually, then

13

Mary is entitled to these monthly distributions. Accordingly, we reverse the judgment of the trial court and enter judgment finding that Mary, as an assignee of Richard's ownership interest, is entitled to his proportionate share of all distributions or allocations made by R.D.C. subsequent to his death on January 29, 2003, as well as legal interest from the date of judicial demand. We further remand the matter for a determination of the balance in his capital account at the time of his death and for a determination of whether the members agreed as to how often the distributions would be made.

With regard to Mary's request for an accounting of all distributions made since January 29, 2003, we find that she, as an assignee, is not entitled to inspect R.D.C.'s records, since this action is reserved for members of the LLC. La.R.S. 12:1319(B)(1); Susan Kalinka, *Death of a Member of an LLC*, 57 La.L.Rev. 451, 452 (1997). Since there is no evidence in the record that the remaining members of R.D.C. unanimously consented to allow Mary to participate in the management of the LLC nor language in the Operating Agreement granting her this right, we find that she is not entitled to this information. La.R.S. 12:1332(A)(1). Accordingly, the judgment of the trial court denying her the right to an accounting of all distributions made since January 29, 2003, is affirmed.

## CONCLUSION

For the foregoing reasons, the ruling of the trial court allowing the defendant-appellee, R.D.C., L.L.C., to file an instanter motion for summary judgment is affirmed. The judgment of the trial court granting summary judgment in favor of R.D.C., L.L.C. is reversed and we now order, render, and decree that there be

14

summary judgment in favor of the plaintiff-appellant, Mary Kinkle, in her capacity as Personal Representative of the Estate of Richard F. Kinkle, finding that she, as an assignee of his membership interest, is entitled to all distributions that he was entitled to from the date of his death, as well as judicial interest from the date of judicial demand. However, the judgment denying her request for an accounting of all distributions made since January 29, 2003, is affirmed. The matter is remanded for further proceedings. The costs of this appeal are to be borne equally by the parties.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART; AND REMANDED.**