# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 18-344


**SUCCESSION OF COLLEEN MCCALMONT**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 43,462
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Candyce G. Perret, Judges.


**AFFIRMED IN PART; REVERSED IN PART.**

**Michael Hathorn Davis**
**P.O. Drawer 12180**
**Alexandria, LA 71315**
**(318) 445-3621**
**COUNSEL FOR APPELLANT:**
**James Addison McCalmont, III**

**Bernard Slattery Johnson**
**Cook, Yancey, King & Galloway**
**P. O. Box 22260**
**Shreveport, LA 71120-2260**
**(318) 221-6277**
**COUNSEL FOR OTHER APPELLEES:**
**Heard, McElroy & Vestal, LLC**
**Ben Woods**

**Roger Joseph Naus**
**Wiener, Weiss, & Madison**
**333 Texas Street, Suite 2350**
**Shreveport, LA 71101**
**(318) 226-9100**
**COUNSEL FOR OTHER APPELLEE:**
**Grant McCalmont**

**Curtis Ray Shelton**
**Ayres, Shelton, Williams, Benson, & Paine, LLC**
**Post Office Box 1764**
**Shreveport, LA 71166-1764**
**(318) 227-3500**
**COUNSEL FOR APPELLANTS:**
**Alexandria Management Systems,LLC**
**J. Mack Ind., LLC**
**McCalmont Ind., LLC**
**Premier Technical Plastics (Minden)LLC**
**James Addison McCalmont, III**

**William Alan Pesnell**
**Pesnell Law Firm**
**P. O. Box 1794**
**Shreveport, LA 71166-1794**
**(318) 226-5577**
**COUNSEL FOR OTHER APPELLEE:**
**James Addison McCalmont, IV**

**Mark Vilar**
**Aaron L. Green**
**Paul Boudreaux, Jr.**
**Vilar & Green, L.L.C.**
**P. O. Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**COUNSEL FOR APPELLEE:**
    **James Addison McCalmont, IV, in his capacity as the independent**
    **executor of the succession of Colleen Hawthorn McCalmont**

**Beverly A. DeLaune**
**Deutsch & Kerrigan**
**755 Magazine Street**
**New Orleans, LA 70130-3672**
**(504) 581-5141**
**COUNSEL FOR OTHER APPELLEES:**
    **Wise, Martin & Cole, LLC**
    **Michael Wise**

**Matthew Nowlin**
**Keiser Law Firm, PLC**
**P. O. Box 12358**
**Alexandria, LA 71315**
**(318) 443-6168**
**COUNSEL FOR OTHER APPELLEES:**
    **Lauren McCalmont**
    **James Addison McCalmont, IV**
    **Payton McCalmont**

**EZELL, Judge.**

James McCalmont III, appeals the decision of the trial court below ordering the production of documents and entry onto land in favor of his son, James McCalmont, IV, (hereinafter Jay), as part of the succession of his former wife, Colleen McCalmont. For the following reasons, we reverse the judgment of the trial court in part and affirm in part.

Mr. and Mrs. McCalmont were married in 1985 and had three children. Mrs. McCalmont filed for divorce in August of 2016, but before the divorce was finalized or community property partitioned, she passed away from a brain tumor in February of 2017. Contentiousness from the divorce remained high among the family and spilled into the current succession proceedings. Jay was appointed executor of his mother's estate. As part of his duties in preparing the succession's detailed descriptive list, Jay sought information from Mr. McCalmont regarding property that was believed to be part of the McCalmonts' community property regime. After Mr. McCalmont refused to provide the information, Jay sought to compel discovery, filing a motion to show cause for entry onto land and for production of documents.

On December 4, 2017, the trial court heard the discovery dispute, ruling for Jay. The trial court ordered Mr. McCalmont to produce several types of lists, estimates of properties, as well as personal, financial, and business documents relating to him, his community property, and businesses the couple had held an interest in. The trial court further ordered Mr. McCalmont to allow Jay entry onto certain properties for the purpose of appraising their values for the estate. From that decision, Mr. McCalmont appeals.

On appeal, Mr. McCalmont asserts eight assignments of error, though there is significant overlap between the assignments. For conciseness, we will address the assignments of error in terms of the discovery ordered against Mr. McCalmont's business entities, and that ordered against him personally.

In ruling upon discovery matters, the trial court is vested with broad discretion and, upon review, an appellate court should not disturb such rulings absent a clear abuse of discretion. *Sercovich v. Sercovich*, 11-1780, (La.App. 4 Cir. 6/13/12), 96 So.3d 600.

Generally, a party may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending litigation, "including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things." La.Code Civ.P. art. 1422. "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Sercovich*, 96 So.3d at 603 (quoting La.Code Evid. art. 401. "The test of discoverability is not whether the particular information sought will be admissible at trial, but whether the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Wollerson v. Wollerson*, 29,183, p. 2 (La.App. 2 Cir. 1/22/97), 687 So.2d 663, 665.

It is well-established in Louisiana jurisprudence that discovery statutes are to be liberally and broadly construed to achieve certain basic objectives of the discovery process:

> (1) to afford all parties a fair opportunity to obtain facts pertinent to pending litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing for trial, (4) to narrow and clarify the issues between the parties, and (5) to facilitate and expedite the legal process by

encouraging settlement or abandonment of less than meritorious claims.

*Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125, 129 (La.1983). However, there are limitations on discovery, particularly "when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense." *Stolzle v. Safety & Systems Assur. Consultants, Inc.*, 02-1197, p. 2 (La. 5/24/02), 819 So.2d 287, 289. In addition, Louisiana jurisprudence has required a showing of relevancy and good cause by a party seeking production of records from a non-party. *Id.* "An appellate court must balance the information sought in light of the factual issues involved and the hardships that would be caused by the court's order when determining whether the trial court erred in ruling on a discovery order." *Wollerson*, 687 So.2d at 665. Accordingly, we will review the trial court's ruling for an abuse of discretion.

## DISCOVERY OF LLC DOCUMENTS

Mr. McCalmont first argues that specific provisions of the Louisiana Limited Liability Companies Act, La.R.S. 12:1301-12:1270, expressly restrict an assignee of a membership interest in an LLC to statutorily limited rights that specifically do not include the right to inspect the records of the LLC. He asserts that the trial court abused its discretion in granting Jay's motion to compel and ordering the production of certain financial documents of the involved LLCs. He further argues that the operating agreement for J-Mack Industries specifically restricts assignees of a member from inspecting records. We must find merit in Mr. McCalmont's argument.

An operating agreement, whether written or oral, governs the operation of the LLC. La.R.S. 12:1330. In the absence of such an agreement, the default

3

provisions of the Louisiana Limited Liability Companies Act govern. Susan Kalinka, *Limited Liability Companies and Partnerships*, 9 Louisiana Civil Law Treatise § 1.5, 16 (3d ed.2001). After a review of the record before this court, the only operating agreement in evidence dealing with the keeping of business records and the rights of assignees was that of J-Mack Industries. The record is silent regarding the remaining LLCs as to their operating agreements and those issues; therefore, we must apply the default provisions of the Louisiana Limited Liability Companies Act. The LLCs, other than J-Mack, will be discussed separately below.

*J-Mack Industries*

An operating agreement is contractual in nature; thus, it binds the members of the LLC as written and is interpreted pursuant to contract law. *Powertrain of Shreveport, L.L.C. v. Stephenson,* 49,327 (La.App. 2 Cir. 10/1/14), 149 So.3d 1274; La.Civ.Code art.1983. In *Henderson v. Sellers*, 01-529, pp. 4-5 (La.App. 3 Cir. 12/5/01), 815 So.2d 853, 856, we explained the law pertaining to contractual interpretation:

> The interpretive purpose is to determine the common intent of the parties. La.Civ.Code art.2045. In attempting to determine that common intent, we may not seek a different interpretation "when the words of a contract are clear and explicit and lead to no absurd consequences." La.Civ.Code art.2046. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ.Code art.2048. We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art.2053. Additionally, where the doubt created by a contract provision cannot be removed, we must interpret that provision against the party who furnished it. La.Civ.Code art.2056.

The determination of whether the words of a contract are clear and explicit or ambiguous is a question of law. Thus, an appellate court's determination on

4

review is whether the trial court interpreted the contract correctly or incorrectly. *Hebert v. Ins. Ctr., Inc.*, 97-298 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, *writ denied*, 98-353 (La. 3/27/98), 716 So.2d 888.

The operating agreement of J-Mack Industries states in section 6.1, Books and Records, that certain records, including several sought by Jay, are to be maintained and to be available to "any Member or an assignee of an Interest." However, the operating agreement more specifically states in section 8.5, Rights of Unadmitted Assignees, that:

> A person who acquires all or any portion of an Interest but who is not admitted as a Substituted Member . . . shall be entitled only to allocations and distributions with respect to such interest . . . but shall have no right to any information or accounting of the affairs of the company, shall not be entitled to inspect the books or records of the company, and shall not have any of the rights of a Member.

We are required by La.Civ.Code art. 2050 to interpret each contractual provision in light of the other provisions in order to arrive at the meaning of the contract as a whole. Interpreting the clauses in the manner that best conforms to the object of the contract, we are forced to conclude that Jay, as an assignee, has "no right to any information or accounting of the affairs of the company, shall not be entitled to inspect the books or records of the company, and shall not have any of the rights of a Member." To ignore that clear, specific provision of section 8.5 in favor of the more generally worded records provision would simply eliminate the effects of section 8.5 entirely and would be an absurd reading of the contract as a whole.

Accordingly, it is clear the operating agreement of J-Mack Industries prohibits Jay from receiving the tax, financial, and other such information the trial court ordered the entities to produce. Therefore, Jay was not entitled to that

information and the trial court abused its discretion in ordering J-Mack Industries to produce those documents. The trial court's order compelling J-Mack Industries to produce those documents is, therefore, reversed.

*The remaining LLCs*

Having discussed the specific operating agreement of J-Mack Industries, we now turn to the Louisiana Limited Liability Companies Act, which governs the remaining companies, whose operating agreements were silent as to the rights of assignees of member interests. Louisiana Revised Statutes 12:1333(A) states:

> Except as otherwise provided in the articles of organization or a written operating agreement, if a member who is an individual dies . . . the member's membership ceases and the member's executor, administrator, guardian, conservator, or other legal representative shall be treated as an assignee of such member's interest in the limited liability company.

Louisiana Revised Statutes 12:1332(A)(2) reads: "Until the assignee of an interest in a limited liability company becomes a member, the assignor shall continue to be a member."

> [Thus] the LLC statute recognizes only one form of interest transfer, an assignment. Even when the disposition of an interest is involuntary, as in the case of death or a charging order by a judgment creditor, the person acquiring rights with respect to the interest of the deceased or debtor member is treated strictly as an assignee of the interest involved. An assignee of an LLC interest is entitled to receive only those distributions and allocations of profits, losses, and tax items that the assignor member would otherwise have received. The assignee may not vote or otherwise participate in the management of the LLC unless and until he is actually admitted to membership in the LLC—a step that requires the unanimous consent in writing of the other members of the LLC

Wendell H. Holmes and Glenn G. Morris, 8 Louisiana Civil Law Treatise, Business Organizations § 44:20 (2018)(footnotes omitted).

> [B]ifurcation of membership rights occurs when a member (the assignor) transfers an interest in the LLC, whether by voluntary sale, seizure, or death. The recipient of a transferred interest (the assignee)

6

is immediately vested with the financial rights associated with that interest. The assignee is only entitled to the financial rights that the assignor was entitled to receive, unless and until the assignee is admitted as a member to the LLC. As a result, the management rights remain vested with the assignor, even if deceased, until the assignee is admitted as a member to the LLC. Such admission requires the unanimous consent of the remaining members.

William A. Neilson, *Uncertainty in Death and Taxes-the Need to Reform Louisiana's Limited Liability Company Laws*, 60 Loy. L. Rev. 33, 36 (2014)(footnotes omitted).

In our review of Louisiana jurisprudence, there appears to be only one case that is directly on point with the matter before this Court. In *Kinkle v. R.D.C, L.L.C.*, 04-1092 (La.App. 3 Cir. 12/8/04), 889 So.2d 405, plaintiff was the personal representative of the estate of a deceased LLC member. There, the plaintiff sought a declaratory judgment against the LLC, seeking judgment declaring that the estate was entitled to its share of distributions and to an accounting of all the LLC's activities since the member's death. Citing La.R.S. 12:1333, this court found that plaintiff, as the representative of the deceased member, became an assignee of decedent's membership interest in the LLC. *Id.* Applying the provisions relating to the assignment of a membership interest, especially La.R.S. 12:1330, this court found that while the estate was entitled to any distributions to which decedent was due, it was not entitled to an accounting of the distributions. The court found that plaintiff, "as an assignee, is not entitled to inspect [the LLC's] records, since this action is reserved for members of the LLC." *Kinkle*, 889 So.2d at 413. In the instant case, we likewise apply the specific provisions of the Louisiana Limited Liability Companies Act and find that Jay, as an assignee, is not entitled to inspect any of the business and financial records he seeks from the LLCs, because that right is reserved for members of the LLC.

7

We agree with Professors Holmes and Morris that "the LLC statute manages to combine the worst features of both corporation and partnership law. . . . and creates a form of property that, under the default rules of LLC law, has little transferable value." Wendell H. Holmes and Glenn G. Morris, 8 *Louisiana Civil Law Treatise*, Business Organizations § 44:20 (2018). We further note that the law as written allows for the creation of situations whereby an assignee of a deceased member's rights, while due distributions, may never be able to see company records to ensure he is actually receiving those distributions in full, because remaining members can simply withhold records that would show what, if anything, may be owed. However, the Limited Liability Companies Act and the limited jurisprudence dealing with the transfer issue before us clearly limit what Jay, as an assignee, is entitled to. While Jay and the estate may be entitled to distributions from the LLCs, they are not entitled to the records which they seek. Accordingly, we must again find that the trial court abused its discretion in ordering the LLCs at issue to provide any business, financial, and tax records to Jay and the estate. The granting of all discovery orders and motions to compel regarding the tax returns, daily journals, cash receipts, company credit card statements, financial statements, property deeds, and any other business records of the LLCs are hereby reversed.

**PERSONAL, FINANCIAL, AND OTHER NON-LLC INFORMATION**

Mr. McCalmont next asserts several assignments of error concerning discovery ordered involving him personally, the former community, and documents relating to a family trust. We will deal with each briefly, as each item sought requires the same showing and review. To reiterate, in order to be granted the information sought, Louisiana jurisprudence only requires Jay show relevancy

and good cause. *Stolzle*, 819 So.2d 287. The information sought need only appear reasonably calculated to lead to the discovery of admissible evidence. *Wollerson*, 687 So.2d 663. We find that the trial court did not abuse its discretion in granting the discovery sought by Jay.

Mr. McCalmont claims the trial court erred in ordering him to provide financial records, including credit card statements, dating back to 2011. William Cole testified as an expert certified public accountant. He stated that the bank and credit card records were needed to determine the value of community bank accounts and to determine if any reimbursement claims existed for the estate against Mr. McCalmont. Applying the discovery statutes liberally and broadly, as required by *Hodges,* 433 So.2d 125, we cannot find an abuse of the trial court's discretion based on this testimony.

Mr. McCalmont next claims the trial court erred in ordering him to provide documents relating to the McCalmont Family Trust. Mr. McCalmont laughably claims that there was no evidence to show that Mrs. McCalmont's estate had any interest in the trust. It is obvious that the point of discovery is to gather evidence to determine if the estate did have any interest therein. Mr. McCalmont is seeking to deny trust information to Jay on the basis of Jay's lack of information regarding that trust. To the contrary, Mr. Cole testified that information regarding the trust was relevant to the succession proceedings, especially as pertaining to estate and gift tax purposes. Based on that testimony, the trial court did not abuse its discretion in ordering discovery regarding the trust.

Mr. McCalmont further maintains that the trial court erred in ordering him to produce records regarding expenses surrounding his paramour during the existence of the former community. Mr. Cole testified that this information could be used in

the estate seeking a reimbursement claim against Mr. McCalmont for the use of community funds for a purpose that certainly would not have served common community interests. As any reimbursement claim would be an estate asset, it would certainly be relevant to the succession. The trial court, therefore, did not abuse its discretion in ordering discovery regarding any expenses relating to Kimberly Ilercil.

Mr. McCalmont alleges that the trial court erred in ordering him to value movable property that may be assets of the succession by way of the former community. Mr. McCalmont acts as if he is a completely disinterested third party to his former wife's succession, despite the fact that the community property regime had just been terminated roughly three months before Mrs. McCalmont's death, their divorce had not yet been finalized, and community property had not been partitioned. Mr. Cole testified that it was common on smaller assets to use statements to determine value for tax purposes, rather than the appraisals required of more significant assets. Mr. McCalmont was by all accounts the manager of the family finances and property, and him producing the items sought and values therefor should not be the hardship he claims it to be. The trial court did not abuse its discretion in ordering Mr. McCalmont to value the listed movable properties, as any value would certainly be relevant to Mrs. McCalmont's succession.

Finally, Mr. McCalmont avers that the trial court erred in allowing Jay access to immovable property to view, photograph, and appraise the properties and any movables thereon that could be community property. Mr. Cole again testified that access to the properties was necessary to inspect and value the properties for tax purposes. This testimony was unrefuted. Again, applying the discovery statutes liberally and broadly, we can find no abuse of the trial court's discretion.

The record before this court establishes that Jay has good cause to seek information regarding each personal and financial item referenced above and the information sought could lead to admissible evidence relevant to the succession. Accordingly, the trial court did not abuse its discretion in ordering the production of the discovery sought. The trial court's rulings as to all production regarding Mr. McCalmont both personally and as manager of the former community are hereby affirmed.

For the above reasons, we hereby reverse the judgment of the trial court below granting any and all discovery ordered as to the LLCs the McCalmonts had any interest in. We affirm the judgment in all other respects. Costs of this appeal are hereby assessed against Mr. McCalmont.

**AFFIRMED IN PART; REVERSED IN PART.**