STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-98

NADDIA AND RANDEL MELDER

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 234,239
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Jimmie C. Peters and Shannon J. Gremillion, Judges.

REVERSED AND REMANDED.

Roy S. Halcomb, Jr.
Broussard, Halcomb & Vizzier
P. O. Box 1311
Alexandria, LA 71309-1311
(318) 487-1311
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Naddia and Randel Melder

Bonita Preuett-Armour
Armour Law Firm
1744 Jackson Street
Alexandria, LA 71301
(318) 442-6611
COUNSEL FOR DEFENDANT/APPELLEE:
    State Farm Mutual Automobile Insurance Company

PETERS, J.

The husband and wife plaintiffs, Randel and Naddia Melder, appeal the trial court's grant of summary judgment in favor of the defendant, State Farm Mutual Automobile Insurance Company (State Farm), dismissing State Farm from the litigation because its policy at issue in this litigation did not provide underinsured/uninsured motorist (UM) coverage for the vehicle involved in the accident sued upon. For the following reasons, we reverse the trial court's grant of summary judgment and remand this matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

On March 1, 2007, Mrs. Melder sustained serious personal injuries in a two-vehicle accident in Alexandria, Rapides Parish, Louisiana. At the time of the accident, she was driving a 2006 Nissan pickup truck with the permission of her employer, Grimes Industrial Supply, L.L.C. State Farm had an automobile liability insurance policy in force and effect insuring the 2006 Nissan at the time of the accident.

The matter now before us arises from a suit filed by the Melders against State Farm and their own private automobile insurer, Louisiana Farm Bureau Casualty Insurance Company, seeking to recover for the damages they sustained under the UM provisions of each policy. After both insurers answered the suit, State Farm filed a motion for summary judgment seeking dismissal of the Melders' claim against it. In the motion, State Farm asserted that when Floyd Grimes, owner of Grimes Industrial Supply, purchased the insurance policy covering the 2006 Nissan, he rejected UM coverage under the policy. In response, the Melders filed a motion for summary judgment seeking a judicial determination that the State Farm Policy did provide UM coverage for the March 1, 2007 accident.

Following a hearing on the motions, the trial court rejected the Melders' motion and granted State Farm's motion, dismissing it as a defendant in the litigation. The Melders appeal that judgment, raising four assignments of error, all of which relate to whether the trial court erred in not finding that genuine issues of material fact existed so as to preclude the grant of a summary judgment.

## OPINION

The motion for summary judgment is a procedural device whose purpose is to avoid a full-scale trial when there is no genuine issue of material fact. *Kay v. Carter*, 150 So.2d 27 (La.1963). Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish those ends. La.Code Civ.P. art. 966(A)(2); *Racine v. Moon's Towing,* 01-2837 (La. 5/14/02), 817 So.2d 21. The burden of proof on the motion for summary judgment remains with the movant. La.Code Civ.P. art. 966(C)(2).

> However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2). The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

> A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of

2

recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

*Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citations omitted).

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.*, 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427. Appellate review of a summary judgment is *de novo*, applying the same standard as the trial court. *Smith*, 639 So.2d 730.

The law pertaining to uninsured motorist coverage was recently summarized by this court in *Ware v. Gemini Ins. Co.*, 10-594, pp. 4-5 (La.App. 3 Cir. 11/24/10), 51 So.3d 179, 181-82:

> UM insurance is provided for by statute that embodies a strong public policy to give full recovery for the automobile accident victims. *Duncan* [*v. U.S.A.A. Insurance Co.*], 06-363 [(La. 11/29/06)], 950 So.2d 544 (citing *Roger v. Estate of Moulton*, 513 So.2d 1126 (La.1987); *A.I.U. Ins. Co. v. Roberts*, 404 So.2d 948 (La.1981); *Tugwell v. State Farm Ins. Co.*, 609 So.2d 195 (La.1992); *Henson v. Safeco Ins. Cos.*, 585 So.2d 534 (La.1991); *Hoefly v. Gov't Employees Ins. Co.*, 418 So.2d 575 (La.1982)). "Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected." *Id.* at 547(citations omitted). The
>
> > rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. . . . A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
>
> La.R.S. 22:1295.

3

The UM statute must be liberally construed. *Duncan*, 950 So.2d 544 (citing *Daigle v. Authement*, 96-1662 (La.4/8/97), 691 So.2d 1213; Roger, 513 So.2d 1126)). This requires a strict interpretation of the exceptions to coverage. *Id.* (citing *Roger*, 513 So.2d 1126). The insurer bears the burden of proving that the insured rejected the UM coverage or selected a lower limit. Id. (citing *Tugwell*, 609 So.2d 195).

The form the Commissioner prescribed involves six tasks:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Duncan*, 950 So.2d at 551. If the insurer uses the prescribed form and "makes certain that it is properly completed and signed, then the insurer receives a presumption that the insured's waiver of coverage was knowing." Id. at 552.

In *Gray v. American National Property & Casualty Co.*, 07-1670, p. 14 (La. 2/26/08), 977 So.2d 839, 849, the supreme court elaborated on the importance of completing the form before it is submitted to the insured for signature.

> We now hold that compliance with the form prescribed by the Insurance Commissioner involves more than the rote completion of the "six tasks" identified in *Duncan* [*v. U.S.A.A. Insurance Co.*, 06-363 (La. 11/29/06), 950 So.2d 544] by someone at sometime. Instead, we find that, in order for the form to be valid, the six tasks must be completed before the UM selection form is signed by the insured, such that the signature of the insured or the insured's representative signifies an acceptance of and agreement with all of the information contained on the form. An insurer who is unable to prove that the UM selection form was completed before it was signed by the insured simply cannot meet its burden of proving by clear and unmistakable evidence that the UM selection form is valid.

In support of its motion for summary judgment, State Farm filed a copy of Policy Number 120-3262-B21-18, which purports to be the policy it issued covering the 2006 Nissan. That policy specifically states that it provides no UM coverage. Additionally, State Farm filed a copy of what appears on the surface to be a properly-

4

completed and signed **Uninsured/Underinsured Motorist Bodily Injury Coverage Form**[1] (UM selection form) wherein Mr. Grimes rejected UM coverage on the 2006 Nissan. In the section of the UM selection form where the choices are to be made, Mr. Grimes' initials appear in the blank stating that "**I do not want UMBI Coverage**." Additionally, his name is printed in the appropriate blank and his signature appears on the appropriate line. The blank set aside for an appropriate policy number is filled in as 18-1825-H52, and the blank line for the date the form was signed bears the date of "8/21/06."

State Farm also produced two affidavits and the deposition testimony of Mr. Grimes. In the affidavits, Mr. Grimes asserted that the 2006 Nissan was titled in the name of Grimes True Value Hardware, L.L.C., a limited liability company owned by him and Frank Grimes; that it was used by Grimes Industrial Supply, L.L.C., the entity employing Ms. Melder; that he was "involved in the management and day-to-day operations" of both limited liability companies; that he contacted the State Farm insurance agent concerning purchasing an automobile liability insurance policy; and that he is a named insured under the policy. Additionally, Mr. Grimes asserted in his affidavits that when he was presented with a UM selection form by his State Farm agent's office, his name, the date of August 21, 2006, and the number 18-1825-H52 had already been printed in the appropriate blank; and that he reviewed the UM selection form and selected the appropriate block rejecting all UM coverage by placing his initials next to the appropriate block.

---

[1]The fact that this form complies with the requirements of the Commissioner of Insurance and La.R.S. 22:1406(D) is not disputed.

State Farm addressed the discrepancy between the temporary application number (18-1825-H52)[2] and the policy number (120-3262-B21-18) with the affidavit of Vera Beckham, its Underwriting Section Manager who resides in the State of Missouri. Ms. Beckham asserted in her affidavit that when Mr. Grimes signed the UM coverage form on August 21, 2006, the procedure was that "[a]t a policy's inception, a temporary application number is assigned to a policy at the agent's office. This number is used to identify an application for coverage. Once the application is accepted by the underwriting department, a policy number is issued." According to Ms. Beckham's affidavit, State Farm issued the policy to "Floyd Grimes and Frank Grimes d/b/a Grimes True Value Hardware Store." The **DECLARATIONS PAGE** of the policy itself reflects that the policy was issued to "GRIMES, FLOYD & GRIME [sic], FRANK, DBA GRIMES TRUE VALUE HDW STORE, 8322 HIGHWAY 71 N, PINEVILLE, LA 71360-2751"[3]

In his deposition testimony, Mr. Grimes testified that he had used the same Alexandria, Louisiana State Farm agent for both business and personal insurance for several years before the issuance of the policy at issue in this litigation and that he normally has nine or ten vehicles insured at the same time—either through his businesses or personally, and that the vehicles would be insured in separate policies. When questioned concerning completing the paperwork on a policy purchase, Mr. Grimes asserted that when he signed the UM selection form, it was always completely

---

[2]In this affidavit, Ms. Beckham provided the temporary application number as 18-1825-1152 instead of 18-1825-H52. She corrected this typographical error in a subsequent affidavit.

[3]A certificate attached to the **DECLARATIONS PAGE** of the policy, prepared on State Farm letterhead stationary and executed by Kristin Mullins, State Farm's Underwriting Team Manager in its Missouri office, also asserts that the insurance policy on file with State Farm was issued to "Floyd Grimes & Frank Grime [sic] DBA Grimes True Value HDW Store" and cites the same Pineville, Louisiana address.

filled out except for his signature and the requirement that he initial the selection of coverage. When he purchased insurance for the 2006 Nissan, Mr. Grimes telephoned his State Farm agent from the automobile dealership to advise his agent of his intentions. He had no independent recollection of when the telephone conversation occurred or when he went to the agency to sign the appropriate papers.

State Farm also produced the deposition testimony of Stacy Anderson, an employee of the Alexandria, Louisiana State Farm agent whom Mr. Grimes contacted to have the policy issued.[4] According to Ms. Anderson, she received a telephone call at 3:37 p.m. on August 21, 2006, and immediately entered the information provided into the computer to obtain company approval. Ms. Anderson asserted in her deposition that after entering the information in the computer, State Farm provided her a temporary application number for use with the office paper work. She then used the information to prepare the UM selection form. In doing so, she printed Mr. Grimes' name, the temporary application number, and the date on the UM selection form in the appropriate places. However, she did not recall being present when Mr. Grimes appeared to sign the form and initial the rejection box, and she did not know whether he came in on August 21, 2006, or sometime thereafter.

While the evidence is extensive concerning the relationship between Mr. Grimes and State Farm, we find that the trial court erred in granting the summary judgment dismissing State Farm as a defendant because a genuine issue of material fact exists as to Mr. Grimes' authority to reject UM coverage. Simply stated, the policy purports to insure a vehicle belonging to Floyd and Frank Grimes, but Mr. Grimes sworn affidavit states that the vehicle belongs to a limited liability company.

---

[4]Ms. Anderson could not say with certainty who contacted her by telephone, but did obtain information concerning Mr. Grimes to be used in the necessary application to State Farm.

Furthermore, the record contains no evidence of the authority by which Mr. Grimes executed the UM rejection, either on behalf of the limited liability company or the apparently non-existent partnership between himself and Frank Grimes. Given that unresolved material fact, the burden never shifted to the Melders in the summary judgment hearing.

## DISPOSITION

For the foregoing reasons, we reverse the trial court judgment and remand the matter for further proceedings consistent with this opinion. We assess all costs of this appeal to State Farm Mutual Automobile Insurance Company.

**REVERSED AND REMANDED.**