NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-957

BRIAN KEITH JONES

VERSUS

JULA TRUST, LLC, ET AL.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-729-10
HONORABLE C. STEVE GUNNELL, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Marc T. Amy, Judges.

AFFIRMED.

J. Bryan Jones, III
P. O. Box 4540
Lake Charles, LA 70606-4540
(337) 598-2638
COUNSEL FOR PLAINTIFF/APPELLANT:
    Brian Keith Jones

M. Blake Monrose
Hurlburt, Monrose & Ernest
P. O. Drawer 4407
Lafayette, LA 70502-4407
(337) 237-0261
COUNSEL FOR INTERVENOR/APPELLANT:
    Pepsi Beverages Company

**Michael J. Monistere**
**Law Office of Sheryl Story**
**One Galleria Boulevard, Suite 1610**
**Metairie, LA 70001-7508**
**(504) 841-5083**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **TMC Foods, Inc.**

**PETERS, J.**

The plaintiff, Brian Keith Jones, and the intervenor, Pepsi Beverages Company (Pepsi), appeal from the trial court judgment granting summary judgment in favor of the defendant, TMC Foods, L.L.C. (TMC), and dismissing Mr. Jones' claims against it. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

On December 8, 2009, while delivering Pepsi products to a Jennings, Louisiana Popeye's Chicken and Biscuits restaurant, Mr. Jones slipped and fell while pulling his loaded dolly through the restaurant's back door. He claims that his fall was caused by the presence of water, grease, or a water/grease-like substance on the floor immediately inside the door. Because he was in the course and scope of his employment with Pepsi at the time of the accident, his employer paid him workers' compensation benefits.

On September 3, 2010, Mr. Jones instituted a personal injury suit against JULA Trust, L.L.C. (JULA), a Crowley, Louisiana limited liability company, who he alleged was the owner and operator of the Popeye's restaurant. Twenty-five days later, on September 28, 2010, Mr. Jones supplemented his original opinion by adding TMC as a defendant. In this first supplemental and amending petition, Mr. Jones asserted that TMC was leasing the physical building from JULA and was the actual operator of the restaurant. Exactly one month later, on October 28, 2010, Pepsi intervened in the suit to recoup sums paid to Mr. Jones in workers' compensation benefits and to offset any future indemnity and medical benefits he might be entitled to as a result of his injuries.

After TMC responded to both claims by answer, Mr. Jones voluntarily dismissed his claims against JULA. TMC then filed a motion for summary

judgment, asserting that Mr. Jones would be unable to prove an essential element of his burden of proof at trial. Following an April 3, 2012 hearing on this motion, the trial court took the matter under advisement. The next day, the trial court issued written reasons for judgment granting the summary judgment and dismissing Mr. Jones' action against TMC. After the trial court executed a June 26, 2012 judgment conforming with its reasons for judgment, both Mr. Jones and Pepsi perfected appeals from that judgment.

In their appeals, both Mr. Jones and Pepsi raise only one assignment of error each. Mr. Jones' assignment of error states the following:

> The trial judge erred in holding that there was no disputed issue of fact and therefore, summary judgment was appropriate, on the basis that there was no evidence that either an employee of Popeye's caused or created the grease/water stain or an apparatus owned by Popeye's caused or created the grease/water stain when the accident happened in the back of the store, a non-customer part of the store, and there is photographic evidence in the record that was submitted with defendant's Motion for Summary Judgment that there is an ice machine in the vicinity of the accident.

Pepsi's assignment of error is much more general:

> The lower court erred by granting defendant's Motion for Summary Judgment resulting in a dismissal of plaintiff's claim, with prejudice.

We find no merit in either argument.

**OPINION**

The law applicable to the consideration of a summary judgment is well settled. The motion for summary judgment is a procedural device whose purpose is to avoid a full-scale trial when there is no genuine issue of material fact. *Melder v. State Farm Mut. Auto. Ins. Co.*, 11-98 (La.App. 3 Cir. 6/1/11), 66 So.3d 603. Summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of every action," except certain domestic actions; the

2

"procedure is favored and shall be construed to accomplish those ends."  La.Code Civ.P. art. 966(A)(2); *Racine v. Moon's Towing*, 01-2837 (La. 5/14/02), 817 So.2d 21.  The burden of proof on the motion for summary judgment remains with the movant.  La.Code Civ.P. art. 966(C)(2).

> However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.  Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).  The motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.  La.Code Civ.P. art. 966(B).[1]

The law applicable to appellate review of a summary judgment determination is equally well settled.  The appellate court reviews summary judgment de novo by applying the same standard as that used by the trial court. *Bergeron v. Liberty Mut. Ins. Co.*, 12-86 (La.App. 3 Cir. 6/6/12), 92 So.3d 645, *writ denied*, 12-1538 (La. 10/12/12), 98 So.3d 873.

In order to maintain a cause of action for injuries resulting from a fall occurring on a business premises, a plaintiff bears the burden of satisfying the requirements of La.R.S. 9:2800.6:

---

[1] Prior to 2013, La.Code Civ.P. art. 966(B) provided, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.  Pursuant to Acts 2012, No. 257, § 1, Article 966(B) was amended to delete the language "on file."  Our decision utilizes the pre-amendment version of Article 966(B).

3

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

According to TMC, the element of proof Mr. Jones could not establish in this litigation was that TMC caused the alleged slippery condition on the floor

and/or that it had actual or constructive notice of its presence. In support of its motion for summary judgment, TMC introduced portions of Mr. Jones' deposition and an affidavit of Larry Dugas, the manager of the restaurant at the time of Mr. Jones' accident, to prove that TMC lacked actual or constructive notice or that it caused the alleged slippery condition present at its rear door.

Mr. Jones' deposition testimony established that the restaurant opened its doors each day for deliveries at 8:00 a.m. and that the accident occurred between 8:00 and 10:00 a.m. on the morning of December 8, 2009. According to Mr. Jones, he had delivered products to this location twenty to thirty times in the past and that he always followed the same procedure: he would drive to the back of the restaurant, unload the required products from his delivery truck, and then enter the premises through the rear door. With regard to the weather conditions that might have affected his December 8, 2009 delivery, Mr. Jones could not recall whether it had rained the night before, but asserted that it was not raining at the time he made this delivery.

Concerning how the accident occurred, Mr. Jones stated that he had loaded his dolly with Pepsi product, which consisted of a number of boxes containing five-gallon bags of post-mix fountain syrup, and was pulling the dolly through the rear door when he slipped and fell. He stated that he had to push his two-wheel dolly up a slight ramp when approaching the door. Once he reached the door, he would turn around and back through the open door, pulling the loaded dolly over the slightly elevated threshold of the door. As he backed inside the door, both of his feet slipped from underneath him, causing him to fall backwards and causing the boxes of Pepsi product to land on him.

Mr. Jones was not sure if the substance causing him to fall was outside on the ramp or inside the door, although he was positive that he was over the threshold and inside the door when he fell. He described the substance as having the appearance of a mist, and although he could not identify it other than to say that it was either grease or water, he asserted that it was very slippery. Additionally, he could not state whether the substance was sufficient in quantity to cause a puddle on the floor. Moreover, he could not recall whether his clothing became wet from his fall to the ground. He stated that he did not pay attention to that even though he continued making his deliveries after this incident. He was unaware of other deliveries that might have been made to the restaurant before his arrival the morning of the accident, and he did not know how the substance arrived on the floor or how long it had been there before his fall. Furthermore, he could not say whether the restaurant's employees were responsible for the substance's presence.

Mr. Dugas' affidavit established that he was the restaurant manager on the day of the accident. According to Mr. Dugas, he arrived at work on December 8, 2009, at 7:15 a.m. and shortly after his arrival, he conducted a Shift Awareness Walk-Through around the premises. This walk-through, according to Mr. Dugas occurred at the beginning and end of every shift he worked. During the walk-through, he inspected, among other things, the floor located just inside the back door. On December 8, 2009, he observed no water, grease, or mist-like substance on the floor at that location. Additionally, he asserted that he "never saw, was notified, or became aware of any water, grease or mist-like substance on the floor inside the back door of the restaurant *before*" Mr. Jones fell, nor did he find this type of substance or any other safety hazards on the floor after Mr. Jones' fall. (Emphasis in the affidavit.) Additionally, Mr. Dugas asserted that "*[a]fter* Plaintiff

6

Jones fell, he found no water, grease, mist-like substance, or any safety hazards on the floor inside the back door." (Emphasis in the affidavit.)

Mr. Jones introduced nothing in opposition to the motion for summary judgment. Instead, at the hearing on the motion, Mr. Jones argued that the trial court could infer (1) that TMC caused the slippery condition because it was located in a restricted part of the restaurant and (2) that the ice machine located outside the restaurant near the back door was the originator of the liquid substance. This was the totality of Mr. Jones' opposition to TMC's motion for summary judgment.

In its reasons for judgment, the trial court stated the following:

> At the hearing, the plaintiff did not introduce any affidavits or other evidence of an ice machine that could have caused the alleged substance to be on the floor. The only documentation offered by the plaintiff in support of his argument was his memorandum in opposition to the defendant's Motion for Summary Judgment. Consequently, as the plaintiff has not offered any factual support sufficient to establish that he will satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the defendant is entitled to have its Motion for Summary Judgment granted.

After reviewing the record, we find, as held by the trial court, that Mr. Jones' failure to present evidence establishing a genuine issue of material fact on the issue of TMC's knowledge or actions regarding the liquid substance, renders this matter dispositive on this issue and summary judgment proper in favor of TMC. Since only facts, and not inferences, will defeat a motion for summary judgment, Mr. Jones' failure to present facts is fatal to his claim. We find no merit in either assignment of error and affirm the trial court judgment.

**DISPOSITION**

For the foregoing reasons, we affirm the judgment of the trial court. We assess all costs of this appeal equally between Brian Keith Jones and Pepsi Beverages Company.

7

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.