693 So.2d 321 (1997)
Cyril HINDS, PlaintiffAppellant,
v.
CLEAN LAND AIR WATER CORPORATION, et al., DefendantsAppellees.
No. 96-1058.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
*322 Gerald I. Hebert, Edward J. Milligan, Jr., Lafayette, for Cyril Hinds.
John Dale Powers, Mary Amrhein Cazes, Baton Rouge, Robert J. Daigre, New Orleans, for Mount Vernon Fire Ins. Co.
Thomas James Wagner, Eric D. Suben, New Orleans, for Highlands Ins. Co.
John Powers Wolff, III, Baton Rouge, for Admiral Ins. Co.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
SULLIVAN, Judge.
Cyril Hinds appeals the trial court's determination on summary judgment that two pollution exclusions precluded coverage for environmental cleanup costs imposed upon Hinds as the "operator" of an industrial waste facility.

Facts
In 1976, Hinds founded Clean Land, Air and Water Corporation (CLAW) and Environmental Purification Advancement Corporation (EPAC), serving as president and principal stockholder of each organization. These companies operated a landfill and deep well disposal site at Bayou Sorrel, Louisiana. In 1978, state and federal authorities closed the Bayou Sorrel site after a truck driver died while delivering materials there.
The ensuing litigation resulted in at least three federal court rulings against Hinds. First, the court found Hinds liable, individually, as an "operator" of a facility under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9657. Allied Corp. v. Environmental Purification Advancement Corp., Nos. 91-727-B, 92-684-B (M.D.La.9/30/93). Next, the court dismissed Hinds' federal law claims against three insurers, Highlands Insurance Company, Mount Vernon Fire Insurance Company, and Admiral Insurance Company, but declined to exercise jurisdiction over any state law claims that Hinds asserted against these parties. Allied Corp. v. Environmental Purification Advancement Corp., 848 F.Supp. 67 (M.D.La. 1994). Finally, Hinds was ordered to pay the United States government $180,651.64, representing his portion of cleanup costs incurred by the Environmental Protection Agency at the Bayou Sorrel site. Allied Corp., Nos. 91-727-B, 92-864-B (M.D.La.11/2/94).
On May 25, 1995, Hinds filed this suit against CLAW, EPAC, Highlands, Mount Vernon, and Admiral, demanding that the insurers pay the federal court judgment, up *323 to their policy limits, and the costs of defense. The insurers responded with exceptions of res judicata and motions for summary judgment.
Highlands issued primary and excess policies to CLAW, effective from October 1975 through October 10, 1977. The primary policy contained the following exclusion:
This insurance does not apply:
(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(Emphasis added.)
Mount Vernon issued a primary policy to EPAC, with Admiral providing excess insurance subject to the terms of the Mount Vernon policy. The Mount Vernon policy contained substantially the same exclusion as the Highlands policy, except for the final phrase italicized above. With the omission of this phrase, Mount Vernon's exclusion is considered an "absolute" pollution exclusion.
To show that the environmental contamination was not "sudden and accidental," Highlands introduced excerpts from the deposition of Donald Antie, a former employee of CLAW. Antie testified that CLAW was in the liquid, deep well disposal business, while EPAC operated a solid waste landfill. In 1978, Antie resigned from CLAW, after expressing concerns about the safety of operations at the Bayou Sorrel site. Specifically, Antie objected to the storage of liquid waste materials, intended for CLAW's well, in open pits at the EPAC landfill.
Antie testified that on many occasions he had designated materials for disposal at the well, but other personnel, including Hinds, diverted them to open pits at the EPAC site, without determining whether they were compatible with other materials there. This became so common that Antie believed "the majority" of the materials at the Bayou Sorrel site were handled improperly. Many times Antie witnessed barrels of waste resurfacing after being buried in these pits and employees shooting holes in the barrels to sink them again. Before his resignation, Antie detailed his concerns in a letter to CLAW's directors, warning them of the dangers of storing liquid waste in open pits. He was certain that CLAW's officers and directors knew of the improper handling of these materials.
After two hearings, the trial court granted the motions for summary judgment filed by Highlands, Mount Vernon, and Admiral, finding the pollution exclusions in each policy unambiguously excluded coverage under the facts presented. The trial court, however, declined to rule on the exceptions of res judicata filed by Highlands and Admiral.
Hinds appeals, contending that the summary judgments should not have been granted because (1) the trial court improperly evaluated the credibility of Antie's testimony, (2) the exclusions in each policy are ambiguous, and (3) the exclusions do not apply to CLAW and EPAC's legal activities of "storage" and "disposal" of waste products. Admiral has answered the appeal, asking this court to grant its exception of res judicata.

Opinion
Summary judgments are reviewed de novo. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94); 639 So.2d 730. In 1996, the legislature amended La.Code Civ.P. art. 966, adding the following language as subparagraph (A)(2):
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
(Emphasis added.)
The amendment also added paragraph (C), which provides:
After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make *324 a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
(Emphasis added.)
The stated legislative intent of favoring summary judgment represents a substantial change in the law of summary judgment. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691. Additionally, paragraph (C) tracks the language of Federal Rule of Civil Procedure 56. Id. Oakley v. Thebault, 96-937 (La.App. 4 Cir. 11/18/96); 684 So.2d 488. The effect of these changes has been summarized as follows: "the nonmoving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly-supported motion for summary judgment." Id. at 490.
However, the amendment did not change the requirement that summary judgment be granted only upon a showing "that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). This burden remains with the mover, "[n]otwithstanding any other provision of this Article to the contrary." La.Code Civ.P. art. 966(G).
Hinds first argues that the trial court erred by relying on Antie's testimony in granting summary judgment, when Antie's credibility was at issue. In support of its motion, Highlands introduced Antie's testimony, its policies, and CLAW's logbooks. Mount Vernon and Admiral introduced their policies and documents filed in the federal proceedings. Hinds did not offer any evidence in opposition to any motion.
It is well settled that issues of credibility have no place in summary judgment procedure. Gassen v. East Jefferson Gen. Hosp., 628 So.2d 256 (La.App. 5 Cir.1993). This principle, however, is generally applied where the evidence before the trial court is conflicting, forcing the trial court to accept one version of the facts over another. In the instant case, nothing in the record contradicts Antie's testimony. If this testimony, combined with the other offerings, established the absence of a genuine issue of material fact and that the movers were entitled to judgment as a matter of law, then Hinds could no longer rest on the allegations of his pleadings. Under the amended version of Article 966, as well as jurisprudential interpretations of its former incarnation, Hinds would be forced to come forward with evidence showing a genuine issue of material fact. See Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036, 1038 (La. App. 3 Cir.1992), where we stated:
The court must first determine whether the supporting documents presented by mover are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does that burden shift to the opposing party to present evidence that material facts are still at issue, and only at this point may he no longer rest on the allegations and denials contained in his pleadings.
We must, therefore, first determine whether the movers have met this initial burden.
In construing pollution exclusions, the Louisiana courts have employed various analyses. Earlier cases held that such exclusions applied only to "active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time." Thompson v. Temple, 580 So.2d 1133, 1134 (La.App. 4 Cir.1991). Thus, the exclusion did not apply to the leaking of carbon monoxide gas from a heater in a home. Id.
Whether defendants were polluters "those who indifferently pollute our environment"as opposed to those who "only incidentally possess the pollutant in the course of their other business" was considered to be a question of material fact for the trier of fact. West v. Board of Comm'rs of the Port of New Orleans, 591 So.2d 1358, 1360 (La. App. 4 Cir.1991). See also Avery v. Commercial Union Ins. Co., 621 So.2d 184 (La. App. 3 Cir.1993). In West, the court reversed summary judgment in favor of the insurer, holding that the trier of fact should determine whether a warehousing facility that only stored hazardous chemicals was an "active polluter." The exclusion in West was an absolute pollution exclusion virtually identical to the Mount Vernon policy.
*325 In South Central Bell Tel. Co. v. Ka-Jon Food Stores of Louisiana, 626 So.2d 1223 (La.App. 1 Cir.1993), the first circuit declined to follow West. Instead, the court held that an absolute pollution exclusion unambiguously excluded coverage for damage to underground cables caused by leaking gas tanks. The court made no effort to determine whether the owner of the tanks, a convenience store operator, was an "active polluter." The supreme court granted writs and reversed, adopting a broader interpretation than West, but one not as sweeping as advanced by the insurance industry. South Central Bell Tel. Co. v. Ka-Jon Food Stores of Louisiana, 93-2926 (La.5/24/95); 644 So.2d 357. Subsequently, the supreme court granted the insurer's request for rehearing and set the case for reargument. However, before reargument, the supreme court vacated its prior opinion, as well as that of the first circuit, and remanded for an evidentiary hearing on other matters. South Central Bell Tel. Co. v. Ka-Jon Food Stores of Louisiana, 93-2926 (La.9/15/94); 644 So.2d 368.
"Consequently, the correct interpretation of the absolute pollution exclusion is unsettled." Sandborn v. BASF Wyandotte Corp., 95-335, p. 23 (La.App. 1 Cir. 4/30/96); 674 So.2d 349, 364.
Although the South Central Bell opinion has been vacated, the supreme court's analysis offers insight in solving the current problem. See Bituminous Fire & Marine Ins. Co. v. Fontenot, 907 F.Supp. 193 (M.D.La. 1995). In South Central Bell, 644 So.2d 357, the supreme court first found an absolute pollution exclusion was ambiguous as a matter of law because its literal application would exclude coverage for routine business accidents for which an insured would reasonably expect insurance protection. Interpreting the exclusion liberally to favor coverage, the court concluded that the exclusion would not apply to fortuitous occurrences where pollution is only "inconsequential to the damages sustained." Id. at 365. However, the exclusion would preclude coverage (1) for "deliberate, knowing and intentional" acts of pollution or (2) for "environmental pollution damages," even if caused by a fortuitous event. Id. Whether the exclusion was triggered required a fact-sensitive analysis of the cause of the occurrence and the nature of the damages. Id.
In the instant case, the testimony of Antie established that CLAW employees intentionally placed waste materials intended for well disposal directly into the land. The documents introduced from the federal litigation established that the damages sustained were environmental. With this evidence, the movers have shown that the two instances for which coverage would be denied under South Central Bell, i.e. intentional pollution and environmental damages, are present here. Assuming that the South Central Bell test is controlling, we find the movers have met their burden of showing the absence of a material issue of fact as to coverage. Hinds, therefore, could not rest on the allegations of his pleadings to defeat summary judgment.
We reach the same conclusion under the analysis in West v. Board of Comm'rs, 591 So.2d 1358. CLAW's activities, as related by Antie, are analogous to those of the defendant in Crabtree v. Hayes-Dockside, Inc., 612 So.2d 249 (La.App. 4 Cir.1992), writ denied, 614 So.2d 1257 (La.1993). In that case, the court had to determine whether a warehouse facility that also provided bagging services was an "active polluter" resulting from the unavoidable release of PVC dust while bagging that substance. In affirming summary judgment for the insurer, the court considered the following:
Hayes, regularly and for an extended period of time (over one year) transported PVC from railcars through a piping system to bag the substance. Hayes was in the business of transporting and packaging PVC, thus they did not "incidentally possess the [PVC] in the course of its other business." West, 591 So.2d at 1360. More importantly, one of the "known consequences" of its operation, as evidenced by the PVC tags, the complaints from the neighborhood, and the nature of the operation, was the emission of PVC dust into the atmosphere.... This factual situation falls squarely within the pollution exclusion under the West test.
Id. at 252.
In response to the insurers' motions, Hinds offered nothing to dispute Antie's *326 account of CLAW's activities. Instead, he argued that the phrase, "sudden and accidental," renders the Highlands policy ambiguous. He also maintained that both exclusions, which required the "discharge, dispersal, release or escape" of certain substances, did not apply to CLAW and EPAC's activities of "disposal" and "storage" of waste materials. For the following reasons, we find neither contention meritorious.
In Primm v. State Farm Fire & Cas. Co., 426 So.2d 356 (La.App. 2 Cir.1983), the court held that an exclusion in a homeowner's policy for damages from the "leakage or seepage of water, unless sudden and accidental" was ambiguous. The ambiguity, however, resulted from the coupling of "leakage or seepage," which connotes happening slowly, with "sudden and accidental," defined by the court as unexpected and abrupt. The court concluded that, by definition, a leakage or seepage from an unknown cause could not be sudden and accidental.
No such contradiction exists in the Highlands policy. The terms "discharge, dispersal, release or escape" do not connote happening slowly over time and, thus, can be unexpected and abrupt. Additionally, Antie's testimony describes ongoing, purposeful conduct that resulted in the environmental damages at Bayou Sorrel. Upon this showing, the trial court did not err in granting Highlands motion, in the absence of evidence challenging Antie's testimony.
Hinds also argues that the exclusions in both policies do not apply because CLAW and EPAC only stored and disposed of industrial waste, which activities were legal at that time. He contends that Antie's testimony offers no evidence of a "discharge, dispersal, release or escape" of the waste, as required by the policies, because the materials were contained within the open pits. We disagree.
In Broderick Inv. Co. v. Hartford Acc. & Indem. Co., 954 F.2d 601 (10th Cir.1992), cert. denied, 506 U.S. 865, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992), the court rejected the same argument, holding that the initial placement of waste in containment ponds was a "release" or a "discharge" into the land as contemplated by the policy. We find this federal authority persuasive and choose to adopt its reasoning here.
In conclusion, we find that the trial court did not err in granting the motions for summary judgment filed by Highlands, Mount Vernon, and Admiral and in dismissing Hinds' suit against these parties with prejudice. Because of this conclusion, we need not address Highlands' additional argument regarding lack of proper notice of the claim and Admiral's exception of res judicata, urged in its answer to appeal.

Decree
For the above reason, the judgments of the trial court are affirmed. All costs of this appeal are assessed to plaintiff-appellant, Cyril Hinds.
AFFIRMED.