# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-934

NADDIA MELDER, ET UX.

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 234,239
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**Cooks, J., dissents and assigns written reasons.**

**AFFIRMED.**

**Roy S. Halcomb, Jr.**
**Broussard, Halcomb & Vizzier**
**Post Office Box 1311**
**Alexandria, Louisiana 71309-1311**
**(318) 487-4589**
**Counsel for Plaintiffs/Appellants:**
     **Naddia Melder**
     **Randel Melder**

**Joseph P. Williams**
**Williams Family Law Firm, L.L.C.**
**Post Office Box 15**
**Natchitoches, Louisiana  71458-0015**
**(318) 352-6695**
**Counsel for Defendant:**
     **Louisiana Farm Bureau Casualty Insurance Company**

**Bonita K. Preuett-Armour**
**Sheridan Hogue**
**Armour Law Firm**
**1744 Jackson Street**
**Alexandria, Louisiana  71301**
**(318) 442-6611**
**Counsel for Defendant/Appellee:**
     **State Farm Mutual Automobile Insurance Company**

**KEATY, Judge.**

Plaintiffs, Naddia and Randel Melder, appeal the trial court's judgment in favor of Defendant, State Farm Mutual Automobile Insurance Company. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

The issue in this case is whether the rejection of uninsured motorist and/or underinsured (UM) insurance coverage was executed by a person with the authority to waive coverage. In that regard, Mrs. Melder was injured in an automobile collision occurring in Alexandria, Louisiana, on March 1, 2007, when the vehicle she was driving, a 2006 Nissan truck, was struck by another vehicle driven by Connie Turlington. Turlington ran a stop sign prior to striking Mrs. Melder's vehicle. Mrs. Melder was working in the course and scope of her employment with Grimes Industrial Supply, L.L.C., at the time of the collision. Mrs. Melder's vehicle was provided to her by her employer although it was owned by another company, Grimes True Value Hardware, L.L.C.

At the time of the collision, State Farm provided an automobile liability insurance policy insuring the vehicle being driven by Mrs. Melder, which afforded UM coverage to Plaintiffs as insureds. Plaintiffs also maintained a separate policy with Louisiana Farm Bureau Casualty Insurance Company which provided additional UM coverage to them as insureds. Since Turlington's vehicle was uninsured, Plaintiffs filed suit against State Farm and Farm Bureau for UM coverage.

State Farm filed a motion for summary judgment seeking dismissal of Plaintiffs' claims against it. State Farm argued that Floyd Grimes (Floyd), the owner of Grimes Industrial Supply, L.L.C., declined UM coverage under the State

Farm policy which provided coverage for the vehicle driven by Mrs. Melder. Attached to its motion for summary judgment was the following: Plaintiffs' Petition for Damages; a certified copy of the State Farm policy issued to "GRIMES, FLOYD & GRIME[S], FRANK DBA GRIMES TRUE VALUE HDW STORE 8322 HIGHWAY 71 N PINEVILLE LA 71360-2751[;]" Floyd's affidavit; and Vera Beckham's affidavit. Plaintiffs filed an opposition and cross-motion for summary judgment, seeking a judicial determination that State Farm provided UM coverage. State Farm then filed a reply and a supplemental memorandum in support of its motion for summary judgment and attached the following additional exhibits, including but not limited to: Floyd's supplemental affidavit; Floyd's deposition taken on July 10, 2013, on behalf of Grimes True Value Hardware, L.L.C.; and Vera Beckham's supplemental and amending affidavit. State Farm also filed a second supplemental memorandum.

Following a hearing on the cross-motions for summary judgment which took place on October 18, 2010, the trial court denied Plaintiffs' motion and granted State Farm's motion for summary judgment, dismissing it as a defendant. Plaintiffs appealed. On appeal, this court reversed and remanded the trial court's judgment, finding that genuine issues of material fact existed as to Floyd's authority to reject UM coverage on the subject vehicle. *Melder v. State Farm Mut. Auto. Ins. Co.*, 11-98 (La.App. 3 Cir. 6/1/11), 66 So.3d 603. Specifically, we held that:

> Simply stated, the policy purports to insure a vehicle belonging to Floyd and Frank Grimes, but Mr. Grimes['] sworn affidavit states that the vehicle belongs to a limited liability company. Furthermore, the record contains no evidence of the authority by which Mr. Grimes executed the UM rejection, either on behalf of the limited liability company or the apparently non-existent partnership between himself

2

and Frank Grimes. Given that unresolved material fact, the burden never shifted to the Melders in the summary judgment hearing.

*Melder*, 66 So.3d at 608. The genuine issue of material fact regarding Floyd's authority to execute the waiver stems from the fact that although the State Farm policy covering the vehicle was issued to Floyd Grimes and Frank Grimes DBA Grimes True Value Hardware Store, the vehicle was titled to Grimes True Value Hardware, L.L.C., and used by Grimes Industrial Supply, L.L.C.

On remand, State Farm filed a second supplemental memorandum in support of its motion for summary judgment. After a hearing which took place on June 23, 2014, the trial court granted State Farm's renewed motion for summary judgment and dismissed Plaintiffs' claims against it with prejudice.

Plaintiffs appeal this new judgment and assign as error the following:

(1) Whether a material issue of fact exists as to the named insured's identity under the State Farm policy such that the trial court legally erred by resolving this factual issue rather than holding that such factual issue precludes summary judgment;

(2) Whether a material issue of fact exists as to the capacity in which Floyd signed the UM rejection form such that the trial court legally erred by not holding that such factual issue precludes summary judgment;

(3) Whether Floyd, in his capacity as manager of Grimes True Value Hardware, L.L.C., and pursuant to its Operating Agreement, is contractually authorized to reject UM coverage on its behalf and, if so, does having such authority matter if he failed to sign the UM rejection form in a representative capacity on behalf of Grimes True Value Hardware, L.L.C.;

(4) Whether ambiguity and lack of clarity invalidates the UM rejection form because of the uncertain identity of the named insured and whether Floyd signed the UM rejection form individually and under the trade name Grimes True Value Hardware, as alleged by State Farm, or as a legal representative of Grimes True Value Hardware, L.L.C., as testified to by Floyd, and;

3

(5)     Whether the trial court legally erred by deciding the validity of the UM rejection form based on the intentions of the parties.

**DISCUSSION**

When reviewing a trial court's judgment on a motion for summary judgment, an appellate court employs the de novo standard of review "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. & Specialty Co., Inc. v. Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. The burden of proof remains with the movant. La.Code Civ.P. art. 966(C)(2). If the moving party, however, will not bear the burden of proof at trial and shows that there lacks "factual support for one or more elements essential to the adverse party's claim, action, or defense[,]" then the non-moving party must produce "factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial[.]" *Id.* If the opponent of the motion fails to do so, there is no genuine issue of material fact, and summary judgment will be granted. *Id.* The motion for summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). Thus, we must analyze the substantive law governing the instant matter to determine whether a material fact exists. *Jagneaux v. Lafayette City-Parish Consol. Gov't Parks & Recreation*, 13-768 (La.App. 3 Cir. 12/11/13), 128 So.3d 681.

4

"In Louisiana, UM coverage . . . embodies a strong public policy." *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987). Determination of UM coverage is by contractual provisions and applicable statutes, including La.R.S. 22:1295. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. The UM coverage requirement is an implied amendment to any automobile liability policy, and such coverage will be read into the policy unless validly rejected. *Duncan*, 950 So.2d 544. This statute is liberally construed, and the statutory exceptions to coverage are strictly interpreted. *Id.* "Any exclusion from coverage in an insurance policy must be clear and unmistakable." *Id.* at 547. The burden of proof remains with the insurer who must prove that the "insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Id.* The law imposes UM coverage unless validly waived despite the policy language, the parties' intentions, or the presence or absence of payment or a premium charge. *Johnson v. Gov't Emps. Ins. Co.*, 07-1391 (La.App. 3 Cir. 4/9/08), 980 So.2d 870, *writ denied*, 08-1031 (La. 8/29/08), 989 So.2d 105. A waiver form failing to meet the formal requirements is not a valid rejection of UM coverage. *Id.*

A valid UM waiver form, which must be complied with by the insurer, requires the following six formalities as enunciated in *Duncan*, 950 So.2d 544:

> (1) the insured must initial the selection or rejection chosen to indicate that the decision was made by the insured; (2) if lower limits are selected, then the lower limits are entered on the form to denote the exact limits; (3) the insured or legal representative must sign the form evidencing the intent to waive UM coverage; (4) the form must include his or her printed name to identify the signature; (5) the insured dates the form to determine the effective date of the UM waiver; and (6) the form must include the policy number to demonstrate which policy it refers to.

*Johnson*, 980 So.2d at 874.

## I. First Assignment of Error

In their first assignment of error, Plaintiffs contend that the trial court legally erred by finding that Floyd and Frank are the named insureds under the State Farm policy. The declarations page states the insureds as: "GRIMES, FLOYD & GRIME[S], FRANK DBA GRIMES TRUE VALUE HDW STORE 8322 HIGHWAY 71 N PINEVILLE LA 71360-2751[.]" Plaintiffs allege that the named insured is Grimes True Value Hardware, L.L.C.

In opposition, State Farm contends that the named insureds are Floyd and Frank. State Farm asserts that "DBA GRIMES TRUE VALUE HDW STORE" is a designation rather than a legal entity separate and apart from the person(s) operating the business, i.e., Floyd and Frank. In support, State Farm cites *Trombley v. Allstate Ins. Co.*, 93-1669, pp. 3-4 (La.App. 3 Cir. 6/1/94), 640 So.2d 815, 817 (quoting *Krawfish Kitchen Rest., Inc. v. Ardoin*, 396 So.2d 990, 993 (La.App. 3 Cir. 1981) (alteration in original)), wherein this court noted that:

> The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person[.]

State Farm cites La.R.S. 22:1295(1)(a)(i) which provides that UM coverage is inapplicable "when any insured named in the policy" rejects such coverage. State Farm notes that La.R.S. 22:1295(1)(a)(ii) provides that the rejection form can be "signed by the named insured or his legal representative." State Farm refers to *Terrell v. Fontenot*, 11-1472, p. 6 (La.App. 4 Cir. 6/27/12), 96 So.3d 658, 662, *writ denied*, 12-2085 (La. 11/16/12), 102 So.3d 43, wherein the fourth circuit

understood "the words 'legal representative' in La.R.S. 22:1295(1)(a)(ii) to mean an individual authorized on behalf of an entity."

In agreeing with State Farm at the hearing, the trial court stated that Floyd is a named insured since "he's listed on the 'dec' page as the named insured." We, therefore, look to the evidence to determine whether Floyd is a named insured under the policy. In that regard, the State Farm declarations page states that the insured is "GRIMES, FLOYD & GRIME[S], FRANK DBA GRIMES TRUE VALUE HDW STORE[.]" In Floyd's initial affidavit, he attests that he owns and is "involved with the management and day-to-day operations of Grimes True Value Hardware, L.L.C. and Grimes Industrial Supply, L.L.C." He attests that the 2006 Nissan truck "was titled to Grimes True Value Hardware, L.L.C. but used by Grimes Industrial Supply, L.L.C." Grimes attests that he purchased the State Farm policy, and he is listed as "a named insured[.]" He attests that the policy was issued to "Floyd Grimes and Frank Grimes d/b/a Grimes True Value Hardware Store and provided liability insurance" for the Nissan truck. He attests that he signed the "UM selection form and opted to reject UM coverage."

Our review of the waiver shows that the initials "FG" were written next to the sentence stating: "**I do not want UMBI Coverage**. I understand that **I will not be compensated through UMBI coverage** for losses arising from an accident caused by an uninsured/underinsured motorist." (Emphasis in original.) The waiver contains a line asking for the printed name of the "Named Insured or Legal Representative[,]" and "Floyd Grimes" is printed on that line. Directly underneath is another line containing Floyd Grimes' signature representing the "Signature of a Named Insured or Legal Representative[.]"

In Louisiana, a contract is interpreted within its four corners whenever the words of a contract are clear, explicit, and lead to no absurd consequences. *Peterson v. Schimek, M.D.*, 98-1712 (La. 3/2/99), 729 So.2d 1024. Our review of the evidence shows that Floyd is a named insured. Although the declarations page contains the designation "DBA GRIMES TRUE VALUE HDW STORE[,]" Floyd is still a named insured since "'[d]oing business under another name does not create an entity distinct from the person operating the business.'" *Trombley*, 640 So.2d at 817 (quoting *Krawfish Kitchen Restaurant, Inc. v. Ardoin*, 396 So.2d 990, 993 (La.App. 3 Cir. 1981)).

Accordingly, we agree with the trial court in this regard, and Plaintiffs' argument is without merit.

## II.    Second Assignment of Error

In their second assignment of error, Plaintiffs contend that the trial court legally erred by failing to find the existence of a material issue of fact regarding Floyd's signatory capacity. Plaintiffs allege that Floyd's deposition testimony that he signed the waiver as the legal representative of Grimes True Value Hardware, L.L.C., contradicts State Farm's allegation that he signed in his individual capacity utilizing the trade name of a sole proprietorship.

In support, Plaintiffs point to State Farm's second supplemental memorandum wherein it allegedly asserts that Floyd signed the waiver in his individual capacity utilizing the trade name Grimes True Value Hardware Store. Plaintiffs are mistaken, however, as State Farm's second supplemental memorandum states that Floyd and Frank "had the authority, as the named insured[], to execute the UM rejection; no separate authority was required to be established in order to obtain insurance or execute a UM rejection under the trade

name 'Grimes True Value Hardware Store.'" Plaintiffs are correct, however, in that Floyd testified that he signed the waiver "on behalf of Grimes True Value Hardware, L.L.C."

The trial court's transcript shows that Floyd's signatory capacity was not an issue since he had the capacity to sign the waiver both individually and representatively. Specifically, the trial court stated that Floyd could sign the waiver since he was a named insured on the declarations page. It further stated that "[w]hether it's the LLC, he's a member. He's the person who has authority on behalf of the LLC. Whether it's a sole proprietorship, DBA, whether he's a named insured himself; it all comes down to the same person[.]" Thus, we must determine whether the evidence shows Floyd's capacity to sign the waiver both personally and representatively.

To determine personal signatory capacity, we must review Louisiana law regarding insurable interests. In that regard, an insured must have an insurable interest in the property in order to recover under the policy. *Erikson v. Audubon Ins. Co.*, 99-284 (La.App. 3 Cir. 10/13/99), 745 So.2d 727, *writ denied*, 753 So.2d 219 (La. 1/14/00). An insurable interest is "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." La.R.S. 22:853(B). "No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured." La.R.S. 22:853(B). The insurable interest must exist at the time the policy is written and at the time of loss. *Armenia Coffee Corp. v. Am. Nat'l Fire Ins. Co.*, 06-409 (La.App. 4 Cir. 11/21/06), 946 So.2d 249.

9

State Farm contends that Floyd and Frank's insurable interest arose by virtue of their ownership of Grimes True Value Hardware, L.L.C., and cites *Haddad v. Elkhateeb*, 10-214, 10-308 (La.App. 4 Cir. 8/11/10), 46 So.3d 244, *writ denied*, 10-2076 (La. 11/12/10), in support. In *Haddad*, this court affirmed the trial court's granting of summary judgment in favor of the defendants, American Tri-State Underwriters, Inc. (American Tri-State) and Certain Underwriters at Lloyds, London (Lloyds), dismissing all of the plaintiffs' claims against them. The plaintiffs, Issa Haddad (Haddad) and Safari, Inc. of New Orleans (SINO), owned commercial property including a building and business personal property that were used to operate a convenience store called Safari Supermarket. In December 2004, the defendant, Ali Elkhateeb (Elkhateeb), leased the premises and the business personal property. He also purchased the store merchandise from the plaintiffs in order to take over the running of the store. After the lease and sale, the plaintiffs retained no further business interest in the store other than collecting monthly rent. Elkhateeb operated Safari Supermarket as the sole proprietor, and, when he applied for a commercial business insurance policy, Elkhateeb utilized the fictitious business name Safari Supermarket, Inc. The insurance application listed "Tarek or Ali" as the contact persons, and only Elkhateeb signed the policy application.

On appeal, Haddad and SINO argued that since they retained ownership of the equipment and other movables used by Elkhateeb in the daily operations of the store, they, rather than Elkhateeb, maintained an insurable interest in the business personal property. We disagreed and held that ownership of the property in question is not a pre-requisite for the existence of an insurable interest. We held:

> Although Elkhateeb did not own the premises or business personal property, other than the inventory or stock, at the time he procured the insurance, he was a lessee and in possession of the property. No

> dispute exists that Elkhateeb used and depended upon each and every item of lost and/or damaged business personal property located in the store in the daily operation of the supermarket. Accordingly, we find that Elkhateeb, who had the right to possess the premises and to use the business personal property, had a significant and substantial economic interest in preserving the damaged and/or stolen business personal property and that he was subject to pecuniary loss due to his inability to operate his grocery without the property, sufficient to constitute an insurable interest. We further find that this insurable interest existed both at the time Elkhateeb procured the insurance covering the business personal property and at the time of loss.

*Haddad*, 46 So.3d at 252 (citations omitted).

The evidence in the instant case shows that Floyd and Frank are listed as the named insureds on the declarations page. Floyd's deposition testimony states that he and Frank own Grimes True Value Hardware, L.L.C, and that Grimes True Value Hardware, L.L.C. owned the truck in question on the date of the accident. Floyd attested in his initial affidavit that the truck was titled to Grimes True Value Hardware, L.L.C. although it was used by Grimes Industrial Supply, L.L.C. The invoice of the vehicle's purchase shows Grimes True Value Hardware, L.L.C. as the purchaser. The Certificate of Title, which is dated August 21, 2006, lists Grimes True Value Hardware, L.L.C. as owner. The waiver was executed by Floyd on August 21, 2006.

Unlike *Haddad* wherein the parties involved landlords, a commercial tenant, and the commercial property insurer, the parties in this case involve Grimes, a corporation, and the automobile insurer. *Haddad* also differs from this case in that in *Haddad* the issue related to the identity of which party, the landlords or tenant, was entitled to recover the insurance proceeds provided by the coverage whereas an issue in this case is whether UM coverage was applicable. Nevertheless, the main issue in *Haddad*, just as in this case, is whether ownership of the property in question is a pre-requisite for the existence of an insurable interest. We, therefore,

11

find the analysis in *Haddad* applicable to the instant case with respect to determining whether Floyd had an insurable interest in the truck.

In that regard, Floyd did not own the truck, but rather, he was the owner of Grimes True Value Hardware, L.L.C., which owned the truck at the time he procured the insurance and at the time of the accident. No dispute exists that Floyd used and depended upon the truck in the daily operation of the business. We, therefore, find that Floyd, who had the right to possess and use the truck as part of his business, had a significant and substantial economic interest in the truck and that he was subject to pecuniary loss due to his inability to operate his business without the truck, sufficient to constitute an insurable interest. As an insured under the State Farm policy, Floyd had the authority to execute the UM form and exclude UM coverage pursuant to La.R.S. 22:1295(1)(a)(1) which allows "any insured named in the policy" to reject UM coverage. Floyd, therefore, had the personal capacity to sign the waiver.

As to his authority to sign the waiver in a legal capacity on behalf of Grimes True Value Hardware, L.L.C., Floyd's second supplemental affidavit states that he is the "registered agent, the manager, and a member of Grimes True Value Hardware, L.L.C.[,]" and that he maintained the same status on August 21, 2006, when he signed the waiver. Grimes attested that as a manager, he is in charge of "all business affairs and full management authority" and that he has the "authority to obtain insurance on vehicles titled in the name of Grimes True Value Hardware, L.L.C., including the authority to execute UM forms in connection therewith." He attested that he had the authority to obtain insurance coverage on the truck in question as well as the authority to execute the waiver pursuant to his managerial authority. In his initial affidavit, he attested that the truck was a business vehicle.

12

The Articles of Organization, which is discussed in more detail below, further give Floyd power to contractually bind the company. Thus, the foregoing evidence shows that Floyd had the legal capacity to sign on behalf of Grimes True Value Hardware, L.L.C.

Nevertheless, *Duncan* provides that the trial court in the instant matter was not required to determine Floyd's signatory capacity as long as he executed the waiver in accordance with the law. Specifically, this court in *Duncan*, 950 So.2d at 552 (citations omitted), stated:

> The statute dictates that a "properly completed and signed form," is now presumed to constitute a knowing waiver of UM coverage. This presumption exists because the prescribed form, if properly completed, clearly evidences the insured's intent to waive UM coverage. The legislature, therefore, shifts the analysis away from the muddied question of whether the insured made an informed decision to knowingly waive coverage. Instead, the legislature states if the insurer uses the form prescribed by the commissioner of insurance and makes certain that it is properly completed and signed, then the insurer receives a presumption that the insured's waiver of coverage was knowing.

In the instant case, the waiver contains Floyd's initials, name, and signature, thus satisfying the third *Duncan* requirement, i.e., the insured or legal representative must sign the form evidencing the intent to waive UM coverage. As such, any further inquiry into Floyd's signatory intent is not required under *Duncan*. Accordingly, this assignment of error is without merit.

## III. Third Assignment of Error

In their third assignment of error, Plaintiffs contend that a genuine issue of material fact exists as to whether Floyd, in his capacity as manager of Grimes True Value Hardware, L.L.C., and pursuant to its Operating Agreement, is authorized to contractually reject UM coverage on its behalf. If so, Plaintiffs contend that a genuine issue of material fact exists as to whether having such authority matters if

Floyd failed to sign the UM rejection form in a representative capacity on behalf of Grimes True Value Hardware, L.L.C.

Section 13.3 of Grimes True Value Hardware, L.L.C.'s Operating Agreement provides:

> No Manager shall have the power to sign for or enter into contracts on behalf of the Company, said power being reserved to the Members, unless authorized by the Members.

In Louisiana, "[a]n operating agreement is contractual in nature; thus, it binds the members of the LLC as written and is interpreted pursuant to contract law." *Kinkle v. R.D.C., L.L.C.*, 04-1092, p. 7 (La.App. 3 Cir. 12/8/04), 889 So.2d 405, 409. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. However, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. Any doubtful provision should be interpreted "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053. Where doubt arises from a provision in the contract that cannot be removed, that must be interpreted against the party who furnished it. La.Civ.Code art. 2056. "The determination of whether the words of a contract are clear and explicit or ambiguous is a question of law[]" such that "an appellate court's determination on review is whether the trial court interpreted the contract correctly or incorrectly." *Kinkle*, 889 So.2d at 409.

The Operating Agreement shows that Frank and Floyd signed the last page as "MEMBERS/APPEARERS" on August 25, 1999. Section 1 states that these two individuals are "APPEARERS" who "shall become and remain **members** of Grimes True Value Hardware, L.L.C." (Emphasis added.) The preamble states that it was formed "in furtherance of the purposes and provisions of the Articles of Organization[.]" Article IV of the Articles of Organization provide that "[t]here are no limitations on the authority of **members** to bind the limited liability company." (Emphasis added.) In his second supplemental affidavit, Grimes attested that pursuant to the Articles of Organization and the Initial Report, he is the "registered agent, the **manager**, and a **member** of Grimes True Value Hardware, L.L.C.," and that he held the same positions on August 21, 2006. (Emphasis added.)

The foregoing shows that Floyd was both a manager and a member. Although he may not have had the authority as a manager to bind the business pursuant to the terms of the Operating Agreement, he had such authority as a member pursuant to the terms of the Articles of Organization and the Operating Agreement. Floyd would retain this authority even if he was only a manager since the Operating Agreement allows members to authorize the manager to contractually bind the company, and he attested that he was authorized to execute UM forms on behalf of the company in a managerial capacity.

At trial, the trial court discussed Floyd's authority as a member to bind Grimes True Value Hardware, L.L.C., when it stated: "[W]hether it's the LLC, he's a member. He's the person who has authority on behalf of the LLC." Based on the above reasoning, we find that the trial court correctly interpreted the

15

contract. Thus, Plaintiffs' argument regarding his managerial authority to bind the company is without merit.

Plaintiffs further contend that Floyd's failure to sign the waiver in a representative capacity creates a genuine issue of material fact. This argument is without merit pursuant to the reasons discussed above in addition to *National Interstate Insurance Co. v. Collins*, 08-693 (La.App. 1 Cir. 2/13/09), 9 So.3d 881, a case cited by State Farm. In *National Interstate*, the issue was whether the trial court legally erred in finding that a UM waiver form was valid, notwithstanding the fact that the insured company's name failed to appear on the form and the insured company's legal representative failed to state that he was signing the waiver in his representative capacity. The appellate court reviewed the *Duncan* factors and found that the UM waiver was not valid and reversed the trial court's judgment granting of National Interstate's motion to dismiss. The appellate court reasoned that the signatory's capacity on the face of the form was uncertain. The decision was subsequently reversed by the supreme court in *National Interstate*, 09-1214, p. 1 (La. 11/6/09), 21 So.3d 316, 316, "because there was no question as to which policy was involved and the legal representative's name was printed on the waiver form[.]"

In the present case, there is no question as to which policy was involved. Floyd's name was initialed, signed, and printed on the waiver form. Pursuant to the supreme court's holding in *National Insurance*, Floyd's failure to state that he was signing the waiver in a representative capacity does not invalidate the waiver. Thus, Plaintiffs' argument is without merit.

16

## IV. Fourth Assignment of Error

In their fourth assignment of error, Plaintiffs allege that a genuine issue of material fact exists as to whether the waiver is invalidated by ambiguity and a lack of clarity arising from the uncertain identity of the named insured along with the unknown signatory capacity.

We have already addressed these issues above. Thus, this assignment of error is without merit.

## V. Fifth Assignment of Error

In their fifth assignment of error, Plaintiffs contend that the trial court legally erred by deciding the validity of the waiver based on the intentions of the parties. Plaintiffs cite *Duncan*, 950 So.2d at 553, as authority wherein the court held that "[t]he insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver."

In their brief, Plaintiffs cite approximately one page of the colloquy between the trial court and Plaintiffs' counsel, Mr. Roy S. Halcomb, Jr., contained in the trial court transcript. We only list those parts wherein the trial court mentioned intent:

> BY THE COURT:
>
> But this is a case [where] the insured is arguing, I intended to waive UM coverage. The insured is arguing that. The, the person who (interrupted)
>
> BY MR. HALCOMB:
>
> It doesn't matter what (interrupted)
>
> BY THE COURT:
>
> . . . . [I]t all comes down to the same person and he is, he is testifying through numerous affidavits that his intent was to not have coverage and to not pay premiums for this coverage and I think we're just

stretching this so far by finding, trying to split hairs here to, to get a policy that clearly wasn't intended by these people and I mean, both parties to the contract are saying we clearly did not intend for this policy to, to be in effect and as, as bad as the result is for the injured, it's, it's just not good law, to go split these hairs and, and try to (interrupted)

In opposition, State Farm contends that the foregoing colloquy occurred after Mr. Halcomb stated the following:

[I]f he had authority - even if you concede he had authority, which we don't, but if you concede he had authority, State Farm alleges he did not exercise that authority. They allege that he did not sign it as a representative of the LLC. They can't have it both ways. They come in here and they say, He didn't sign it as a representative of the LLC and so we don't ever get to the question of, Did he have authority to do it? State Farm has alleged he didn't.

State Farm contends that the trial court was referring to signatory capacity intent in direct response to Plaintiffs' counsel's argument,.

After our reading of the entire transcript, we agree with State Farm in that Plaintiffs exceeded the authority issue by questioning Floyd's signatory capacity. It was only at this point wherein the trial court discussed his intent, which was in direct response to Plaintiffs' argument. The trial court, therefore, did not decide the validity of the waiver issue based upon Floyd's intent. Rather, and as previously discussed, it decided the validity of the waiver based upon the law and the evidence. Further, and as discussed above, the trial court correctly found that Floyd had the authority to sign in both an individual and representative capacity utilizing the law and the evidence. Thus, Plaintiffs' assignment of error is without merit.

**DECREE**

The trial court's judgment is affirmed. All costs of this appeal are assessed to Plaintiffs, Naddia and Randel Melder.

18

**AFFIRMED.**

NADDIA MELDER, ET UX.

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.

Cooks, J., Dissent.

Plaintiff  Naddia Melder (Melder)was injured in an auto accident when her vehicle was struck by a vehicle driven by Connie Turlington.  Melder was working as an employee of Grimes Industrial Supply, L.L.C.  The vehicle driven by Melder was titled to and owned by a different L.L.C., namely Grimes True Value Hardware, L.L.C.  Both L.L.C.'s are owned by Frank Grimes and Floyd Grimes. The Grimes' vehicle was insured under a policy with State Farm Insurance which was obtained to cover the vehicle on the day it was purchased by Grimes True Value Hardware, L.L.C. The bank financing the purchase was named as an additional insured as the lienholder.  On the declarations page of the policy the policy purports to be issued to: "Grimes, Floyd & Grime[s], Frank DBA Grimes True Value HDW Store, 8322 Highway 71 N Pineville, LA 71360-275."  The UM Selection Form for this policy indicates on two lines that Floyd Grimes signed that form rejecting UM coverage identifying him as the "Named Insured or Legal Representative" and that Floyd's signature is the signature representing the "Signature of a Named Insured or Legal Representative[.]"  State Farm paid the claim for the total loss of the Grimes' vehicle by making a payment to the

1

bank/lienholder for the balance on the loan, and paying the remaining amount to *Grimes True Value Hardware, L.L.C.* State Farm maintains there is no UM coverage on the policy insuring the Grimes' vehicle as coverage was waived in writing.

This appeal was taken from the second ruling on State Farms Re-Fixed Motion for Summary Judgment. Previously, this court reversed the trial court's granting of summary judgment in favor of State Farm and remanded the case **finding there were unresolved genuine issues of material fact.** This court held:

> Simply stated, the policy purports to insure a vehicle belonging to Floyd and Frank Grimes, but Mr. Grimes['] sworn affidavit states that the vehicle belongs to a limited liability company. Furthermore, the record contains no evidence of the authority by which Mr. Grimes executed the UM rejection, either on behalf of the limited liability company or the apparently non-existent partnership between himself and Frank Grimes. Given that unresolved material fact, the burden never shifted to the Melders in the summary judgment hearing.

The case was remanded to the trial court. No writ was filed with the State Supreme Court.

State Farm filed a second supplemental memorandum in support of its Motion for Summary Judgment which it asked to be re-fixed for hearing. Following a hearing on the re-fixed Motion for Summary Judgment, the trial court again granted summary judgment in favor of State Farm finding there is no UM coverage under the policy insuring the Grimes' vehicle. The trial court dismissed Plaintiff's claims against State Farm with prejudice. Plaintiffs appeal.

The majority affirms the trial court's ruling applying the de novo standard of review. I disagree with the majority decision reversing the ruling of the previous panel of this court. The majority recognizes that Louisiana law favors UM coverage and that any exception to coverage must be strictly construed. It also

2

acknowledges that the law requires adherence to strict formalities for rejecting UM coverage. The majority recites six requirements of form which must be met for a valid UM waiver: (1) the insured must initial the selection or rejection (2) if lower limits are selected the lower limit must be entered on the form denoting the exact limit (3) the insured or legal representative must sign the form evidencing the intent to waive UM coverage (4) the from must include his or her printed name to identify the signature (5) **the insured dates the form to determine the effective date of the UM waiver** and (6) the form must include the policy number to demonstrate which policy it refers to. Because Floyd Grimes is the only person who signed the waiver form the majority sets out to determine if his signature meets the above criteria. The majority finds there is no genuine issue of material fact that Floyd Grimes is an insured under the policy and as such signed a valid waiver of UM coverage on this policy for the subject vehicle.

I do not believe this matter is ripe for summary judgment. The majority, like the trial court, errs in making determinations of credibility, considering the merits of the case, evaluating deposition testimony and testimony by affidavit, and engaging in the weighing of evidence, all of which are not appropriate on summary judgment. As this court stated in *Fusilier v. Dautrive*, 99-692 (La.App. 3 Cir. 12/22/99), 759 So.2d 821, 831, *reversed on other grounds by* 2000-151 (La.7/14/00), 764 So.2d 74 (emphasis added):

> The first issue that must be addressed in reviewing a trial court's grant of summary judgment is whether any genuine issues of material fact exist. *Smith v. Our Lady of the Lake Hosp. Inc.,* 93-2512 (La.7/5/94); 639 So.2d 730, *appeal after remand,* 96-1837 (La.9/27/96); 680 So.2d 1163. The reviewing court must next address whether reasonable minds could conclude, based on the facts presented, the mover is entitled to judgment. *Id.* In other words, summary judgment is appropriate when all relevant facts are brought before the court, **the relevant facts are undisputed**, and **the sole**

3

**issue remaining is the conclusion to be drawn from the relevant facts.** *Id*

In this case, the relevant facts are seriously disputed and Plaintiffs have put forth more than sufficient evidence to create factual disputes which cannot be resolved on summary judgment. As we have often stated: "*Issues of credibility have no place in summary judgment procedure.*" *Hinds v. Clean Land Air Water Corp., 96–1058 (La.App. 3 Cir. 4/30/97); 693 So.2d 321.* Any of the State's conclusions, which are contained within the records, cannot be substituted for the fact-finding process provided by a trial." *Carriere v. State*, 708 So.2d 822, 824 (La. 3 Cir. 1998) (emphasis added). The Plaintiffs have shown that they can put forth substantial evidence which calls into question many genuine issues of material fact necessary to a fair and full resolution of this matter. Summary judgment is not a substitute for a trial on the merits.

> "**It is not the court's function on a motion for summary judgment to determine or even inquire into the merits of the issues presented**. While deposition testimony may be used to support or oppose a motion for summary judgment, **it may not be weighed**." *Lexington House v. Gleason,* 98-1818, p. 6 (La.App. 3 Cir. 3/31/99); 733 So.2d 123, 126 (citations omitted).

*Mouton v. Sears Roebuck*, 99-669 (La.App. 3 Cir. 11/31/99), 748 So.2d 61,67, *writ denied,* 99-3386 (La.2/4/00), 754 So.2d 232 (emphasis added).

The majority bases its reasoning on its finding that Floyd Grimes is an insured under the policy because he had an insurable interest in the vehicle. It finds the affidavit presented in supplemental support of the re-fixed Motion for Summary Judgment shows that Floyd Grimes is a member of both the True Value LLC and the Industrial Supply LLC and is involved in the daily operations of both LLCs, and further finds these affidavits show that the truck was used by both LLCs. The majority states "Grimes' attests that he purchased the State Farm

4

policy, and he is listed as a 'named insured[.]'" It further states "[Floyd] attests that the policy was issued to 'Floyd Grimes and Frank Grimes d/b/a Grimes True Value Hardware Store and provided liability insurance' for the Nissan truck. He attests that he signed the 'UM selection form and opted to reject UM coverage.'"

After Defendants filed the Motion to Re-fix the Motion for Summary Judgment and the attendant affidavits in support thereof, Plaintiffs took the deposition of Grimes True Value Hardware, LLC. Floyd Grimes appeared at the deposition as the designated representative of Grimes True Value Hardware, LLC. Plaintiffs also obtained the Allstate Insurance Company (the insurer of the Turlington vehicle) claim file regarding this accident. They assert that the documents obtained from Allstate, along with the deposition testimony of Floyd Grimes, demonstrate there are unresolved genuine issues of material fact which can only be resolved by a trial on the merits. Plaintiffs assert, as they previously asserted in the prior case before this court, that many material issues of fact remain unresolved including but not limited to the question regarding what person and/or entity constitutes the "named insured" on the policy; in what capacity did Floyd Grimes sign the UM rejection form; if Floyd Grimes signed the rejection form on behalf of the LLC did he have authority to do so. Plaintiffs aver that the evidence submitted at the hearing on the Re-fixed Motion for Summary Judgment shows that the vehicle was purchased by Grimes True Value Hardware, LLC with a loan from Union Bank, secured by the vehicle. The vehicle was titled in the name of the LLC and the bank was listed as a mortgage holder. The bank required the LLC to insure the vehicle and name Union Bank as an additional insured. Grimes True Value Hardware, LLC purchased the insurance policy via telephone conversation between Floyd Grimes and State Farm's agent on August 21, 2006, the same day

5

the vehicle was purchased by the LLC. The LLC paid all premiums for the policy and paid all payments on the loan from Union Bank. At this point in the litigation there has been no testimony from the other member of the two LLCs. Plaintiff further asserts that the evidence shows that Floyd Grimes testified in deposition that he has never operated any business or sole proprietorship known as "Grimes True Value Hardware" or "Grimes True Value Hardware Store," and the only entity which has ever operated at the address listed in the insurance policy is "Grimes True Value Hardware, LLC." Plaintiff also maintains the evidence thus far shows that the rejection form was filled in by an employee of State Farm, Ms. Anderson. Anderson does not know on what date Floyd Grimes signed the rejection form and does not recall if she was even present when Floyd signed the form. Our court previously found that Floyd does not recall on what date he went to the insurance agency to sign the UM rejection form. No new light is shed on this question in the Re-fixed Motion for Summary Judgment hearing. State Farm asserts Floyd signed the rejection form in his personal capacity as "Floyd Grimes" d/b/a "Grimes True Value Hardware Store." State Farm also asserts that the LLC is not insured for its vehicle under this policy and alternatively asserts Floyd signed for the LLC in his capacity as Manager and/or Member of the LLC with authority to bind the LLC. The facts remain genuinely disputed.

Plaintiff also asserts that the Operating Agreement governing the LLC provides: "No manager shall have the power to sign for or enter into contracts on behalf of the company, said power being reserved to the members, unless authorized by the members." Plaintiff points out the trial court "made a factual finding that Floyd Grimes is the named insured under the policy and, regardless, the intent of the parties was to reject UM coverage." Plaintiff correctly maintains

6

that "In determining whether an issue is 'genuine', Courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence," and cites numerous cases in support of their position. I agree with Plaintiff's cited line of cases for this proposition.

The majority further states that "the trial court stated that Floyd is a named insured since 'he's listed in the "dec" page as the named insured.' We, therefore look to the evidence to determine whether Floyd is a named insured under the policy." The majority then "reviews" the factual evidence and finds that Floyd Grimes had an insurable interest in the vehicle, and, as he is named on the policy as "Floyd Grimes DBA Grimes True Value HDW Store," is an insured who may properly reject UM coverage. The majority again engages in inappropriate fact finding and determinations of credibility. It then proceeds to reason that the DBA designation "does not create an entity distinct from the person operating the business," citing *Trombley v. Allstate Ins. Co*., 93-1669 (La.App. 3 Cir. 6/1/94), 640 So.2d 815 and *Krawfish Kitchen Rest., Inc. v. Ardoin*, 396 So.2d 990 (La.App. 3 Cir. 1981). Thus, says the majority, the trial court correctly found that Floyd is a named insured on the policy who could reject UM coverage in his individual capacity.

Having engaged in making this determination, the majority next finds that the question of "in what capacity did Floyd sign the rejection form" is not an issue because the trial court found Floyd could sign in both his individual capacity as Floyd Grimes, and in a representative capacity for the LLC. This finding is made despite this issue being genuinely disputed by the parties and no court having yet heard from the other member of the LLCs who is also listed on the insurance policy. Nevertheless, the majority proceeds to "determine whether the evidence

7

shows Floyd's capacity to sign the waiver both personally and representatively."

The majority also determines that Floyd has a personal insurable interest in the vehicle under the jurisprudence defining an insurable interest as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." The majority finds that ownership of the property is not a prerequisite for the existence of an insurable interest and then finds that Floyd is a member of both the LLC that owned the truck and the LLC that most often used the truck. It also finds that as there is no factual dispute Floyd used and depended on the truck in the daily operations of the LLC that he "had the right to possess and use the truck as part of his business, had a significant and substantial economic interest in the truck and that he was subject to pecuniary loss due to his inability to operate his business without the truck, sufficient to constitute an insurable interest." Thus, the majority concludes, Floyd had the authority as one with an insurable interest to obtain coverage on the vehicle and reject UM coverage. The majority reasons that since Floyd is listed on the policy as "Floyd Grimes DBA" he personally/individually was a named insured who is now determined to have had an insurable interest and could therefore validly reject UM coverage. This determination ignores substantial facts presented by Plaintiffs regarding the owner/purchaser/insurer of the vehicle owned by the LLC which disputes Defendant's claims and the majority's findings.

The majority also addresses the factual issue of whether Floyd could sign the rejection on behalf of the LLC if it would be determined that the policy insured the LLC, the only record title owner of the vehicle. It concludes that the evidence shows he had such capacity as a member and/or manager of the LLC, and, finds

8

that Floyd's "failure to state that he was signing the waiver in a representative capacity does not invalidate the waiver."

The majority rejects Plaintiff's assertion that there is a genuine issue of material fact as to whether the waiver should be invalidated because it is ambiguous and unclear as to the identity of the named insured and/or the unknown signatory capacity of Floyd. Plaintiff asserts:

> [T]here is no way to determine if the UM rejection form was signed by the named insured or its legal representative simply by looking at the UM rejection form as prepared by State Farm and signed by Floyd Grimes. In fact, the parties themselves cannot agree on who the named insured is under the policy and whether Floyd Grimes signed the UM rejection form in his individual capacity or in a representative capacity. Adding to this ambiguity is the fact that the name Grimes True Value Hardware, LLC appears nowhere on the UM rejection form, and Floyd Grimes purchased all of his automobile insurance, personal and business, through the same State Farm agency, this ambiguity and lack of clarity invalidates the UM rejection form.

An unresolved ambiguity and/or lack of clarity on the UM rejection form would invalidate rejection of UM coverage. The majority acknowledges this is so.

Additionally, the majority acknowledges that **there must be strict adherence to the formalities of what constitutes a valid waiver** and lists among those formalities the specific requirement that **the "insured" must date "the form to determine the effective date of the UM waiver."** Clearly this requirement remains completely unresolved in this case. At this stage the evidence presented by both parties shows that no one can say **if** or **when** Floyd Grimes dated his purported rejection of UM coverage. Thus, at present, there is not strict adherence to the requirements of a valid waiver. In order to reach the conclusions reached by the trial court and the majority one must engage in some serious fact finding, credibility determinations, and the weighing of evidence and deposition testimony

presented in support of and in opposition to the Motion for Summary Judgment, and, one must overlook the fact that the date criteria listed by the majority as a strict requirement of formality is not met. I agree with the original panel's finding that there are unresolved genuine issues of material fact. Plaintiffs have now introduced more than enough evidence to demonstrate that multiple issues necessary to the disposition of this case remain in serious dispute. With all due respect, I do not agree with the majority opinion because I believe it goes beyond what either the trial court or this court may do on a motion for summary judgment. For the reasons stated I respectfully dissent.